Argued April 28, reversed June 2, reconsideration denied
July 2, petition for review denied August 6, 1975

AUCKLAND, *Respondent, v.* BOARD OF COUNTY
COMMISSIONERS OF MULTNOMAH COUNTY
(No. 394 342), *Appellants.*

536 P2d 444

*Paul G. Mackey,* Deputy County Counsel, Multnomah County, argued the cause for appellants. With him on the briefs was George M. Joseph, County Counsel, Multnomah County.

*Paul M. Reeder,* Hillsboro, argued the cause for respondent. With him on the brief were Reeder & Rapp, Hillsboro.

Before SCHWAB, Chief Judge, and LANGTRY and TONGUE, Judges.

SCHWAB, C. J.

Plaintiff wants to develop his 18 acres of rural property on the Multnomah Channel of the Willamette River near Portland by constructing a marina for 70 houseboats. The defendant county commissioners denied plaintiff permission to do so. In this writ of review proceeding, the circuit court determined that plaintiff should be able to construct the marina:

"IT IS ORDERED:

"1. This matter is remanded to the Board of Commissioners of Multnomah County, and it is ordered to approve the application of the plaintiff by reclassifying said land described as Tax Lot 1, Section 36, 3 North 2 West, Multnomah County, Oregon, from F2 to F2-CS, for the purpose of constructing a houseboat marina for 70 houseboats under the terms and conditions as set forth in the application being number ZC 36-73, Multnomah County Planning Commission.

"2. If the Board of Commissioners shall fail to do so within 30 days of the date hereof, this Decree shall stand in lieu thereof."

The circuit court's judgment was erroneous.

Plaintiff's property is in an F-2 district. Plaintiff applied for a CS overlay, or, in the alternative, a change to R-10 CS.

Under the terms of the zoning ordinance, an F-2 zone is an "agricultural, grazing, horticulture and timber growing district, with a minimum lot size of two (2) acres." Section 2.10. The R-10 zone is a "single family residential district, with a minimum lot size of ten thousand (10,000) square feet." Section 2.10. The ordinance also creates a community service (CS) overlay zone, authorizing, with county approval, certain uses in any other zone. Sections 7.00 through 7.47. One use recognized in a CS district "when approved at a public hearing by the Planning Commission," is "boat moorage, marina [or] houseboat * * *." Section 7.30(a).

The question of whether an F-2 CS designation for plaintiff's property would permit construction of a marina for 70 houseboats is a question of law, involving interpretation of the zoning ordinance, especially Section 7.47 that provides that property with a CS overlay remains subject to "restrictions and limitations * * * required in the district." The county contends this means that even if plaintiff's 18 acres were zoned F-2 CS, the intensity of development could not exceed the limits of the F-2 base zone, i.e., one residence for every two acres, or a total of nine residences. The county also equates construction of a residence on land with moorage of a houseboat appurtenant to land. The county's position is best explained by an opinion of the district attorney, rendered at the request of the planning commission and included in the return to the writ:

"You ask whether the zoning ordinance controls the density of residential development to the extent that the number of houseboats in a moorage authorized under Community Service is limited to the

number of dwelling units permitted in the base zone. You indicate that your present policy is that the number of houseboats should be limited by the base zone and ask regarding the propriety of such a position.

"Section 7.10 indicates that the Community Service Section of the ordinance deals with special uses which because of their special characteristics do not logically fit into the other sections of the ordinance, i.e., except for their peculiar characteristics, would normally be included. Section 7.30 permits the use of a 'boat moorage, marina, houseboat or boathouse' provided that it is consistent 'with the purposes of this ordinance'.

"Section 7.26 indicates that the Planning Commission has the right to attach special conditions or limitations 'in relation to the purposes of the ordinance' in these special use situations.

"Section 7.47 states that 'other restrictions and limitations shall be as required in the district'.

"In earlier opinions from this office discussing his Community Service Section, we have held that use of an R-20 lot for purposes of access to a houseboat moored by and attached to the lot would be subject to regulation by the Commission on the theory that such use is *actually a use of the land itself*.

"Likewise, the practice of the City has been, we understand, to continue its land zones into the river to the harbor limit and apply the same standards for building, construction and sanitation to uses afloat.

"We would, therefore, conclude that the present policy of your office is in accord with a plain reading of the ordinance, especially in light of Section 7.47, making such a duty mandatory."

■ We find nothing in the record or plaintiff's argument that convinces us this interpretation of the zoning ordinance is incorrect. Plaintiff's application for F-2 CS designation to construct a marina *for 70*

*houseboats* was properly denied because it would have been legally impossible to develop the property in that manner even with an F-2 CS designation.

██ The trial court found: "Defendants did not rule on plaintiff's application requesting" F-2 CS designation. This is erroneous. Even though the defendants did not make a factual determination on the F-2 CS application, it is clear they made the legal determination described above. And even if the circuit court had been correct in its did-not-rule finding, it would still have been in error in proceeding to the merits in this writ of review case. Such a case involves review of "decisions." ORS 34.020. If, contrary to the present facts, no decision was made, there was nothing to review.

█ The circuit court also found: "Reclassifying the plaintiff's property from F2 to F2-CS is not a zone change." This is irrelevant. Whenever one seeks to use property in a manner that is not an outright permitted use, and must therefore obtain governmental approval, the necessary governmental proceedings are quasi-judicial in nature within the meaning of *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973). This is true whether the other-than-permitted-use is sought by way of a zone change, comprehensive plan change,[1] conditional use permit, variance, or as in this case, "a reclassification." The labels are not controlling. Instead, *Fasano* is applicable when land-use decisions affect specific individuals and involve application of general rules to individual interests. 264 Or at 579-81.

This is a mixed blessing for the proponent of a use that is not permitted outright. Procedurally, the proponent is protected by the *Fasano* quasi-judicial

---

[1] Marggi v. Ruecker, 20 Or App 669, 533 P2d 1372 (1975).

standards. Substantively, the proponent must meet the *Fasano* burden of proof.

Plaintiff claims, and the circuit court found, a procedural violation of *Fasano* because the county commissioners failed to make adequate findings of fact. The findings read:

"Be it remembered, that at a meeting of the Board of County Commissioners held July 3, 1973, the following action was taken:

"Application [of] George Auckland * * * Planning Commission recommends denial of amendment of Sectional Zoning Map #11, changing the described property from F-2 to R-10, C-S, for a 70-space houseboat marina on the basis that the proposal is not consistent with the Comprehensive Plan, that the property is too far from established urban areas and that the applicant has not demonstrated that the community need for such facilities would best be served on this property

"ORDERED that the recommendation of the Multnomah County Planning Commission be adopted as the order of the Board * * *."

■■ A local governing body may adopt findings made by any of its subordinates, such as the planning commission or its staff. *See, Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 536 P2d 435 (1975). The present findings, in effect reciting that plaintiff failed to sustain his burden of proof, are sufficient to support a decision to deny the requested change. *Dickinson v. Bd. of County Comm.,* 21 Or App 98, 533 P2d 1395 (1975).

■■ Substantively, the circuit court concluded:

"The evidence presented by the plaintiff at the hearing before the Board of County Commissioners established by clear and convincing evidence that plaintiff is entitled to have his property reclassified * * *."

This is erroneous. The role of the courts in these cases is limited to ascertaining whether there is substantial evidence to support the decision of local officials, not to weigh the evidence de novo. *Dickinson v. Bd. of County Comm.*, supra. Moreover, whether plaintiff "is entitled" to construct a 70-houseboat marina depends, in part, upon whether this would comply with the local comprehensive plan. *Baker v. City of Milwaukie*, 271 Or 500, 533 P2d 772 (1975). The record indicates it would not. For example, the planning commission reported to the county commissioners:

> "The Multnomah County Comprehensive Plan shows this property is located in a rural area, recommended for agricultural and open-space uses. The Planning Commission has interpreted that this designation includes low-density residential occupancies. Proposals for uses in this area over the years since the plan was enacted have resulted in Planning Commission actions which have consistently reaffirmed this rural character.
>
> "* * * * *
>
> "The primary land use issue before your Board is whether or not this rural area shall be urbanized. The applicant proposes that 70 families shall be housed on a tract of 18.22 acres. The gross lot size per family is 11,338 sq. ft., the same as an urban lot of 110 x 113 feet * * *.
>
> "The question of a houseboat moorage is a secondary issue since the site cannot be used in this way without generating an urban density and character and the need for urban services. * * *"

Reversed.