Argued November 17, reversed December 22, 1975, reconsideration
denied January 28, 1976, petition for review pending

ROCKWAY ET AL, *Appellants, v.* STEFANI ET AL,
(No. 88468), (CA 4641), *Respondents,*
HIMOUNT LAND, INC., *Intervenor-Respondent.*
543 P2d 1089

*Paul R. Duden,* Portland, argued the cause for appellants. With him on the briefs were Tooze, Kerr, Peterson, Marshall & Shenker; Charles D. Ruttan and Morrison, Dunn, Cohen, Miller & Carney; Peter Davis, and Merten & Saltveit, Portland.

*Scott H. Parker,* Deputy District Attorney, Oregon City, argued the cause for respondents. With him on the brief was Roger Rook, District Attorney, Oregon City.

*John C. Caldwell,* Oregon City, argued the cause for intervenor-respondent. With him on the brief were Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

SCHWAB, C. J.

This writ of review proceeding is a challenge to a conditional use permit issued to the intervenor, Himount Land, Inc., by the Clackamas County Board of Commissioners to begin constructing a planned unit development known as Cedar Ridge.

Although as noted below, the detailed plans for Cedar Ridge are not now known, the apparent present intent is to build 1600 dwelling units on about 400 acres near Brightwood. Himount's application for the conditional use permit also indicated the development would include recreational facilities such as a golf course, and 17 acres of commercial development, including a convention center, restaurant, cocktail lounge, motel, gas station, miscellaneous shops and a heliport. The 400 acres in question is zoned to permit such a planned unit development as a conditional use.

The trial court upheld the granting of the conditional use permit. We reverse on the ground that Himount's application was legally insufficient to permit an informed decision by the Board of County Commissioners on the contemplated development.

I

Before turning to that issue, however, we are met at the outset by Clackamas County's assertion that its approval of Cedar Ridge was legislative in nature, and that the writ of review is thus the improper procedure to challenge it. *See, Parelius v. City*

*of Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975); *Culver v. Dagg,* 20 Or App 647, 532 P2d 1127, Sup Ct *review, denied* (1975). The county argues that "quasi-judicial" decisions by local governments are limited to zone changes, as was the case in *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and do not include the granting or denial of conditional use permits because neither involves a zone change. The law is settled to the contrary. *Shanks v. Washington County,* 22 Or App 426, 539 P2d 1111, Sup Ct *review denied* (1975); *Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372, Sup Ct *review denied* (1975); *Culver v. Dagg,* supra. As we said in *Aukland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 536 P2d 444, Sup Ct *review denied* (1975):

> "* * * Whenever one seeks to use property in a manner that is not an outright permitted use, and must therefore obtain governmental approval, the necessary governmental proceedings are quasi-judicial in nature within the meaning of Fasano v. Washington Co. Comm., 264 Or 574, 507 P2d 23 (1973). This is true whether the other-than-permitted-use is sought by way of a zone change, comprehensive plan change, conditional use permit, variance, or as in this case, 'a reclassification.' The labels are not controlling. Instead, *Fasano* is applicable when land-use decisions affect specific individuals and involve application of general rules to individual interests * * *."

■ This is such a case. The general rules being applied are the relevant comprehensive plan and zoning ordinance. Himount is the specific individual whose interest is solely or primarily subject to these rules; there was evidence that Himount either owned or had options to buy all of the 400 acres in question. We reject the county's argument that approval of Himount's contemplated development constituted legislative action.

## II

■ Himount concedes it did not comply with § 25.4 of the Clackamas County Zoning Ordinance, which governs the required contents of applications for approval of planned unit development projects:

"There shall be included as a part of the application an accurate map drawn to a scale of not less than one-hundred (100) feet to the inch showing the boundaries of the site, names and dimensions of all streets bounding or touching the site; the proposed location and horizontal and vertical dimensions of all buildings and structures proposed to be located on the site; proposed location and dimensions of open space within the site; proposed public dedications, if any, within the site; location dimensions and design of off-street parking facilities showing points of ingress to and egress from the site; the location, direction and bearing of any major physiographic features such as railroads, drainage canals, shore lines, and existing topographic contours at intervals of not less than five (5) feet together with proposed grading, drainage and landscaping."

Himount describes its Cedar Ridge application as a "master plan," whereby it was seeking approval of the "concept" of its planned unit development, with specifics to be furnished after approval of the concept. Such a procedure is not authorized by the zoning ordinance.

To avoid that conclusion, Himount first criticizes the requirements of § 25.4, arguing in its brief:

"* * * Both the Intervenor and its planners believed it would require an unreasonable expenditure and would not be required by the planning staff to go into all technical details of construction as required by the strict letter of the zoning ordinance * * *. It should be noted that the Clackamas County Planned Unit Development Ordinance,

found in Section 25 of the Zoning Ordinance, is unfortunately not a workable ordinance for a project of the size of Cedar Ridge * * *.

"* * * * *

"* * * The authors of the zoning ordinance had limited horizons at best."

■ Himount's more substantial argument for circuming the zoning ordinance; they are not justification for violating the zoning ordinance.

Himount's more substantial argument for circumventing § 25.4, in which the county joins, is based upon the wording of the county commissioners' decision in this case. That decision recites that Himount's appeal of the "Planning Commission's denial of the request for a conditional use permit * * * for a planned unit development is allowed for Phase 1[①] subject to the following conditions * * *:

"1. Preliminary plats for Phase I of the planned unit development shall be submitted for planning staff review in accordance with the subdivision ordinance prior to commencement of development in such phase of the planned unit development as designated on the maps and plans submitted to the Planning staff, with final approval of such preliminary plats to be reserved to the Board of County Commissioners.

"2. Final plats for Phase I of the planned unit development shall be submitted as development progresses to the Planning staff for final approval by the Board of County Commissioners in accordance with the subdivision ordinance.

"3. The preliminary and final plats so submitted to the staff shall comply in all respects with all provisions of the Clackamas County Subdivision

---

[①] Himount planned to construct Cedar Ridge in either 13 or 11 or 3 phases, depending upon which part of the record is correct.

Ordinance, the Clackamas County Zoning Ordinance and the Mt. Hood Community Plan.

"4. Engineering of roads, water and sewer shall be subject to approval by the County Department of Public Works and such state agencies as may have jurisdiction in the respective instances.

"5. Preliminary plats for subsequent phases of the development shall be submitted subject to the same conditions as with Phase I, and any further conditions or actions by the Board as the Board deems proper.

"6. The Board of Commissioners retains continuing jurisdiction and supervision over the planned unit development for the protection of public interest."

In short, it appears that the commissioners adopted Himount's theory and approved only a "concept" or "master plan," with specific plats and plans to follow. Stated differently, the commissioners seem to be granting approval subject to future approval.

This is not authorized by § 25.4 of the zoning ordinance. The purpose behind requiring submission of complete and detailed plans *before* approval of any planned unit development was discussed in *Frankland v. City of Lake Oswego,* 267 Or 452, 462, 470-71, 517 P2d 1042 (1973):

"* * * Obviously, in order to guarantee a well conceived and well designed planned unit development, the planning authorities must have the necessary plans and information from the developer before making a decision * * *.

"* * * * *

"A requirement in a PUD ordinance that a developer submit final plans showing with some particularity the various features involved in his planned unit development, and that thereafter he is bound to these plans, serves at least two desir-

able purposes. First, it gives the planning authorities and the City Council full knowledge of what they are asked to approve before they grant a zone change. Secondly, it gives any opponent complete information about the project. It serves no worthwhile purpose for an ordinance to allow a full public hearing on a proposed planned unit development and zone change if the facts are not available. There is nothing to debate. Neither the opponents nor the proponents would know the issues, and the governing body charged with making a decision would be doing so in a vacuum. In so holding, we are aware of the need for flexibility in planning, but flexible planning does not, in our view, justify delegation of the planning function to a private developer, nor does it allow a developer to build without regard to plans as presented to the appropriate planning authorities."

Interpreting § 25.4, which requires submission of complete and detailed plans, in light of this language, we conclude it does not authorize what the county is attempting to do here—piecemeal or phase-by-phase approval of the 400-acre Cedar Ridge development.[2]

■ We think that a subsidiary issue further documents this conclusion. The planned-unit-development provisions of the zoning ordinance permit "incidental retail" use to "be specifically and selectively authorized" when it serves "primarily as a convenience to the inhabitants of the project." The subsidiary issue is whether Himount's planned 17-acre commercial development is permissible under this standard. The problem is that so little detail is stated about the exact nature of the contemplated commercial development

---

[2] We do not here hold that a local government cannot ever legally approve a general master plan lacking final detail or authorize phase-by-phase planned unit developments. We merely hold that Clackamas County is not permitted to do so under its present zoning ordinance.

that it is impossible to tell whether its design is in keeping with that restriction.[9]

Himount and the county dismiss this commercial-development issue as a "straw man," contending the county has only approved Phase I of Cedar Ridge, which does not include commercial development. Again, it is impossible to be sure. One part of Himount's application for a conditional use permit states the "commercial district will be developed in Phase I and Phase V." Another document states the earliest commercial development will occur in later phases. The only explanation of this contradiction before the county commissioners was counsel's cryptic statement that one constitutes "the application as it was originally submitted and the other is essentially a modified plan," but the record does not disclose which is which. Moreover, the oral descriptions of the planned phases of Cedar Ridge's construction bear no correlation with any of the written descriptions. *Cf.,* n 1, supra.

■ Local government cannot approve part of a planned unit development when it is impossible from the record to know what is included in that part.

Reversed.

---

[9] The comprehensive plan does not permit any commercial development on the 400 acres in question. Himount concedes that the comprehensive plan will have to be amended before Cedar Ridge can be built as now conceptualized. This is some further indication that the county's approval here under review was, to say the least, premature.

Moreover, we note that § 22.4(2) (c) of the zoning ordinance requires publicly owned water and sewer systems for planned unit developments the size of Cedar Ridge. Yet nothing in Himount's application materials or evidence before the county commissioners indicated that any publicly owned water or sewer systems were available to serve Cedar Ridge.