Argued May 20, affirmed August 2, reconsideration denied September 1, petition for review denied September 21, 1976

JACKSON et al, *Respondents,*

*v.*

BOARD OF COUNTY COMMISSIONERS FOR
CLACKAMAS COUNTY, *Respondents,*
KALAL et ux, *Appellants.*

(No. 87751, CA 5193)

552 P2d 559

*Wade P. Bettis, Sr.,* Canby, argued the cause for appellants. With him on the briefs were R. Roger Reif and Bettis & Reif, Canby.

*William Bradley Duncan,* Hillsboro, argued the cause and filed the brief for respondents Jackson through Riverman.

No appearance for respondents Board of County Commissioners for Clackamas County, Thomas D. Telford, Fred Stefani, and Robert Schumacher.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

■ The defendants county commissioners issued a conditional-use permit to defendants Kalal for construction of a 110-unit mobile-home park on about 40 acres zoned RA-1 (rural agricultural single-family residential).[1] In this writ of review proceeding, the circuit court set aside the permit on the ground "that the record is devoid of proof * * * to establish a public need for the conditional use."[2] The dispositive issue is whether the Clackamas County Zoning Ordinance permits the contemplated number of mobile homes to be placed on the Kalals' property. As best as we can tell, it does not.

■ The relevant parts of the zoning ordinance are something of a maze. In the RA-1 zone, single-family dwelling units are permitted outright. Section 4.62(C). Under the title, "Dimensional Standards," the ordinance reads: "Minimum lot size: One (1) acre [per dwelling unit]." Section 4.65(A). Trailer parks are permitted as a conditional use in the RA-1 zone "as provided in Section 8." Section 4.64(A).[3]

Turning to Section 8, a general provision at the beginning thereof provides:

> "Any conditional use shall meet the dimensional standards of the Zone in which it is to be located, as well as the minimum conditions listed below." Section 8.1(C).

---

[1] The county's decision here reviewed refers to "110 units on approximately 40 acres." Kalals' reply brief claims: "There are an additional 15 acres which serve as a buffer zone." We cannot understand from the record where or what this buffer zone is. In any event, as explained below, it makes no difference whether the development of 110 units would be on 40 or 55 acres.

[2] The trial court's reasoning was erroneous under *Kristensen v. Eugene Planning Com.,* 24 Or App 131, 544 P2d 591 (1976), decided subsequent to the trial court's decision in this case. The Kalals argue this compels reversal of the trial court. They are incorrect. We review the action taken by the trial court, not its reasoning process. *See, State v. Swain/Goldsmith,* 267 Or 527, 530, 517 P2d 684 (1974). In other words, the trial court is entitled to reach the right result for the wrong reason.

[3] The zoning ordinance uses the terms "trailer park" and "mobile home park" interchangeably.

[ 267 ]

The only minimum condition listed below applicable to mobile home or trailer parks reads: "As specified in Section 7.4." Section 8.6(B).

Turning to Section 7.4, subsection (G) thereof provides: "Each trailer space shall contain a minimum of 1,500 square feet * * *."

Assuming that a "trailer space" is the functional equivalent of a "lot," the question becomes whether the applicable minimum requirement is one acre per trailer, as seemingly provided by Sections 4.65(A) and 8.1(C) read together, or 1,500 square feet per trailer as seemingly provided by Section 7.4(G).

It is impossible to answer with complete confidence. However, the stronger indications are that the required minimum in the RA-1 zone is one trailer per acre. This interpretation is consistent with the stated purpose of the RA-1 zone: "to provide and protect areas for agriculture." Section 4.61. This interpretation gives effect to Section 8.1(C), which requires *any* conditional use to meet the *dimensional standards* of the zone in which it is located; any other interpretation nullifies Section 8.1(C). Finally, our interpretation also gives effect to Section 7.4(G) ("Each trailer space shall contain a minimum of 1,500 square feet * * *."), because: (1) trailer parks are permitted as a conditional use in all "Multi-Family, Commerical, and Agricultural" zones, Section 8.6(A); (2) in some of these zones there is no minimum lot size, *see,* e.g., Section 5.16(A)(7); and therefore, (3) the 1,500 square-foot minimum required by Section 7.4(G) must be applicable when the zone involved does not have some greater dimensional standard.[4]

---

[4]The contrary interpretation urged by the Kalals would permit 29 mobile homes per acre in the RA-1 zone. While local governments are free to so provide, it is somewhat difficult to appreciate the rationality to a land-use scheme that allows one conventionally constructed home per acre or 29 mobile homes per acre in the same zone. This suggests that such a scheme, if adopted by a local government, should be spelled out clearly. It is not in the Clackamas County Zoning Ordinance.

Since we interpret the zoning ordinance as requiring one acre per trailer in the RA-1 zone, it follows automatically that it is legally impossible for the Kalals to obtain a conditional-use permit to develop their property more intensively. *Auckland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 536 P2d 444, Sup Ct *review denied* (1975).

■ Appellants also contend that they are entitled to a conditional-use permit because they were in the process of developing their property as a mobile home park at the time it was zoned RA-1. *Clackamas County v. Holmes,* 265 Or 193, 508 P2d 190 (1973), holds that in certain circumstances property owners can continue an existing use notwithstanding the subsequent adoption of a zoning ordinance that prohibits or restricts that use. However, there is not the slightest suggestion in *Holmes* that a property owner has a right to obtain a zone change or conditional-use permit; instead, that case involved the right to continue a *nonconforming use.* The distinction is not just a matter of labels. A nonconforming use can, for example, be lost by abandonment, ORS 215.130(4); a use that is permitted outright or conditionally (once approved) cannot.

The Kalals are entitled to make their argument that they have a vested right to continue their nonconforming use in some other context, such as mandamus to compel issuance of necessary permits, or in defending a suit for an injunction, as was the situation in *Holmes.* That argument is irrelevant to whether they are entitled to a conditional-use permit.

For these reasons, we reach the same result as did the trial court, although for different reasons. *See,* n 2, *supra.*

Affirmed.