Argued March 23, affirmed in part, reversed in part and remanded with instructions November 6, petition for reconsideration denied December 12, 1978, Supreme Court review allowed April 17, 1979

## NEUBERGER et al, *Appellants,*
### *v.*
## CITY OF PORTLAND et al, *Respondents.*
## (Nos. 417 998, 417 999, CA 7976)
## (Cases consolidated)
586 P2d 351

Paul R. Meyer, Portland, argued the cause for appellants. With him on the briefs was Kobin & Meyer, Portland.

Stephen T. Janik, Portland, argued the cause for respondents Homer G. Williams, Ronnie A. Bissell, Roland A. Haertel, D. Neal Marlett, Alan G. Quasha, Wayne G. Quasha, and Jill Quasha, Co-Partners doing business as Wilbihama Investors; OROC Lands (Oregon), Inc., an Oregon corporation; OROC Lands, Ltd., a Hong Kong corporation; Wilbihama Investors and OROC Lands, Ltd., a joint venture; Walter Lommel, Jr., Trustee; and Ed E. Meier and Helene E. Meier. With him on the brief was Jennifer J. Johnson, and Davies, Biggs, Strayer, Stoel and Boley, Portland.

Thomas R. Williams, Senior Deputy City Attorney, Portland, argued the cause for respondents City of Portland, Oregon; Neil E. Goldschmidt, Mayor and Member of the Council of the City of Portland; Francis J. Ivancie, Mildred Schwab, Connie McCready and Charles R. Jordan, Commissioners and Councilmen of the City of Portland. With him on the brief was Christopher P. Thomas, City Attorney, Portland.

Before Richardson, Presiding Judge, and Lee and Johnson, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

This appeal concerns the validity of an ordinance of the City of Portland, adopted in September, 1975, granting a zone change from R-20 (single-family residence-20,000 square feet) to R-10 (single-family residence-10,000 square feet) for a 601 acre parcel of undeveloped land in northwest Portland. There are three landowners in the parcel, all of whose interests are subject to purchase contracts or options by a joint venture (applicant) which plans eventually to construct approximately 1,300 single family residences on the parcel. The ordinance allowing the zone change makes development of the parcel contingent on the applicant's subsequent procurement of city approval for a Planned Unit Development (PUD).

The petitioners, who are mainly owners of property adjacent to the rezoned parcel, sought judicial review of the City's action by both Writ of Review and Declaratory Judgment. Those two proceedings were consolidated below, and the trial court dismissed the declaratory judgment suit on the ground that the relief sought in it was substantially identical to the relief sought through the writ of review. After trial, the court also dismissed the writ of review. Petitioners appeal both orders of dismissal. We affirm the dismissal of the declaratory judgment and reverse and remand in the writ of review proceeding.

The threshold question in this case is whether the proceedings before the city council were required to comply with the quasi-judicial substantive and procedural requirements of *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), and subsequent related decisions of the Supreme Court and this court. Oregon's appellate courts have frequently been called upon to decide whether particular local land-use decisions are quasi-judicial or legislative in nature. In *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977), the Supreme Court observed:

[ 15 ]

"The property in question is a single compact tract of land under the ownership or control of a single developer. Our references in this opinion to 'single tract' or 'single parcel' amendments are convenient ways of describing the type and scale of land-use decisions which we have treated as quasi-judicial. *See*, e.g., *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973) (zone change on 32 acres under single ownership); *Green v. Hayward*, 275 Or 693, 552 P2d 815 (1976) (zone change on one 50-acre tract owned by proponent of change and adjacent 90-acre tract upon which proponent held option to purchase); *Petersen v. Klamath Falls*, 279 Or 249, 566 P2d 1193 (1977) (annexation of 141 acres owned by four individuals who planned a coordinated development). *Compare Culver v. Dagg*, 20 Or App 647, 532 P2d 1127 (1975) (rezoning of more than half of county; land under diverse ownership); *Parelius v. Lake Oswego*, 22 Or App 429, 539 P2d 1123 (1975) (rezoning of 73 acres consisting of more than 25 parcels in diverse ownership); *Joyce v. City of Portland*, 24 Or App 689, 546 P2d 1100 (1976) (rezoning of 842 acres owned by at least 'several dozen' individuals). We do not intend, by the use of the terms 'single tract' and 'single parcel' to adopt a test for determining when a given land-use decision is quasi-judicial rather than legislative. A number of factors such as the size of the area affected in relation to the area in the planning unit, the number of landowners affected, and the kinds of standards governing the decision-makers may be relevant. The decision with which we are now concerned is clearly quasi-judicial, and we find it unnecessary to formulate, in the present case, a test for making that determination. 280 Or at 11, n 5.

It is also unnecessary to formulate a comprehensive test in this case for making that determination. For the reasons which follow, we conclude that a zone change proceeding is necessarily quasi-judicial when it is undertaken at the instance of a single applicant or a combination of applicants with united interests in the parcel they seek to have rezoned.[1]

---

[1]It also follows from the Supreme Court's and our decisions that a land-use proceeding must be quasi-judicial, regardless of the source of the

There is consensus among the parties that the zone change in question, involving in excess of 600 acres, was regarded as "a major matter of policy for the City." However, the potential policy ramifications of a land-use decision are not determinative of whether *Fasano* applies. The rationale of *Fasano* is that local land-use decisions must be made in a quasi-judicial setting when there are "dangers of the almost irresistible pressures that can be asserted by private economic interests on local government." 264 Or at 588. In *Sunnyside,* the Supreme Court characterized *Fasano's* purpose as being

"* * * that land use decisions made *at the instance of a private party* be made only for reasons having to do with the needs and welfare of the community at large rather than for the accommodation of individual landowners or private developers. * * *" 280 Or at 14. (Emphasis supplied.)

*See also Auckland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 601, 536 P2d 444, *rev den* (1975).

The cases where we have concluded that land-use decisions were legislative rather than quasi-judicial are distinguishable from the present case, and the distinguishing facts illustrate why the City proceedings in this case were required to be quasi-judicial. In *Joyce v. City of Portland,* 24 Or App 689, 546 P2d 1100 (1976), we held that the City of Portland's rezoning of an 842 acre tract, adjacent to the parcel in question here, was a legislative action and not subject to *Fasano's* requirements. In *Joyce,* the rezoning ensued from a *sua sponte* evaluation by the city council, and the tract contained several dozen individual landowners. We stated:

motion for change, if only one interest or a small number of related interests can be affected positively or negatively by the change. *See, e.g., Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372, *rev den* (1975), where we held that *Fasano's* quasi-judicial requirements were applicable to a comprehensive plan amendment initiated by the Hillsboro City Council and affecting "a single small parcel of property * * *." 20 Or App at 670.

[ 17 ]

"When a tract of land separately owned by a substantial number of individuals is rezoned as a result of a governmental evaluation of the existing land-use limitations imposed on the area, the change reflects a general policy and the action of the body is considered a legislative determination. * * *" 24 Or App at 691.

*See also Culver v. Dagg,* 20 Or App 647, 532 P2d 1127, *rev den* (1975); and *Parelius v. Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975).

■ Conversely, in this case, there is not a substantial number of landowners in the affected parcel, and the rezoning was instituted by the single interest which has controlling rights in the entire parcel rather than by an independent government evaluation. The facts in *Joyce* inherently assured a disinterested decision by the governmental body and imput by the large number of landowners *within* the affected tract who had conceivably divergent interests. Those assurances are absent here. In this case, approximately 90 owners of property *adjoining* the parcel participated in the city council's deliberations. However, that extensive participation by strangers to the tract can only be viewed as a coincidence, and is no basis for the formulation of a rule of law. While the concerned participation in land-use deliberations by persons whose property would be directly impacted by the decision is a constant, the certainty of persons from nearby areas being similarly concerned cannot be assumed; nor, in the absence of quasi-judicial procedures, can the ability of such adjacent landowners to learn of a proposed change or to make their concern known to the decision-making body be assured.

The proceedings before the city council were required to be quasi-judicial and to comply with the requirements of *Fasano* and following cases. Because quasi-judicial actions are reviewable by writ of review, the trial court committed no error in dismissing the petitioners' declaratory judgment suit. We accordingly turn to the merits of petitioners' appeal in the writ of review proceeding.

[ 18 ]

The task of dealing with that appeal is complicated by the petitioners' presentation of the issues. The first 84 pages of their 221 page brief contain a statement of facts which is distorted, argumentative and hardly informative. Petitioners then devote 50 pages to a recitation of 42 assignments of error. At page 135, petitioners' counsel finally commences argument. Much of the argument in the brief consists of points supported by unrelated propositions. In short, petitioners have fired a "whiff of grapeshot" in a 720 degree direction in the hope that something may hit the target.

■ Given our conclusion that the quasi-judicial requirements of *Fasano* were applicable to the City proceedings, the principal issue raised by the writ of review is whether the applicant and the City complied with those requirements. *Fasano* requires that three substantive standards must be met, as shown by the proof of the proponents of a zone change, before the change can be allowed: first, that "the change is in conformance with the comprehensive plan" (or, in the absence of a comprehensive plan, "with generally accepted land use planning standards"); second, that "there is a public need for a change of the kind in question"; and third, that the public need is best met by the proposed change on the proposed land "as compared with other available property." *Fasano,* 264 Or at 583, 584; *Braidwood v. City of Portland,* 24 Or App 477, 481, 546 P2d 777, *rev den* (1976). A corollary of the third standard is that

> "* * * [i]f other areas have previously been designated for the particular type of development, it must be shown why it is necessary to introduce it into an area not previously contemplated and why the property owners there should bear the burden of the departure." *Fasano,* 264 Or at 586. (Footnote omitted.)

Petitioners contend that the applicant failed to meet its burden of proof as to those substantive standards, that the City's findings with respect to those standards were deficient, and that there was no

substantial evidence to support the City's findings. Of the several specific arguments the petitioners make regarding the *Fasano* standards, only one warrants discussion: whether the applicant proved that the public need could best be accomplished by a zone change on the parcel in question rather than on alternative locations previously zoned or susceptible to being zoned in the same classification as the applicant sought for its property.

The petitioners state that "applicant had no evidence, and acknowledged it had none, concerning alternative sites," and that there was a report from a City planning official to the effect that there were 3,695 acres of alternative undeveloped land in northwest Portland, a similar number in southwest Portland, and large amounts of undeveloped acreage in the unincorporated areas of Multnomah County and in Washington County. The applicant does not dispute the basic premise of petitioners that there was no proof regarding the feasibility of high density residential development on specific alternative locations. The applicant argues that the absence of such proof does not violate *Fasano* because, given the nature of the public need for the zone change which the applicant proved, its parcel was uniquely suited to the objectives the City sought to accomplish through the zone change, *e.g.,* proximity of the residential development to the central business area, compatibility with the use of a mass transit system, and the size of the area which could be contiguously developed at R-10 density. In other words, the applicant argues that its proof of what the public need was, simultaneously established that only its own property could suffice to meet the need. As summarized by the applicant:

> "The property has a unique capability of fulfilling these needs. There are no other parcels of land in the western portion of the City which have the same characteristics that are necessary to fulfill these needs. Thus there are no comparable parcels which might provide an alternative site for this project *and no other sites which Fasano requires the City to compare to the Property.*

"* * * * *

"* * * Petitioners contend that no one inventoried all of the vacant land within the City of Portland and within the tri-county area. It is correct that there was no such inventory, but *Fasano* does not require one. As pointed out above, there was ample evidence of the Property's uniqueness and its suitability to serve the public needs identified by the City Council. * * *" Applicant's brief at 67, 70-71. (Emphasis added.)

The applicant's reasoning is circular. The applicant was required to prove, first, the existence of a public need for the zone change, and second, the preferability of effecting that change on its parcel rather than on other available property. The applicant argues that the proof of the first fact obviated the need for proving the second. It is conceivable that evidence could be introduced to establish a public need for a zone change which is so specific that it can be accomplished only on a particular parcel of property. Here, however, it appears that the applicant and the City made an *a priori assumption* that only one parcel *could* suffice to meet the public need, and the applicant offered no proof to substantiate that assumption. In sum, *Fasano* required that the applicant offer evidence that other undeveloped property already zoned or susceptible to zoning at the higher density was either less suited than its property or wholly unsuited for the fulfillment of the "identified public needs" of the City. Applicant's argument that *Fasano* requires no comparison because nothing *could* be comparable begs the question.

Some support for the applicant's position can be found in *Green v. Hayward,* 275 Or 693, 552 P2d 815 (1976). There, the Supreme Court stated:

"* * * It is contended that there was no showing of necessity for change in this case, as much of the land in Lane County which had been previously zoned for heavy industrial development had not been used for that purpose. It is also argued that Bohemia's desire to build its new plant on land which it already owned (or had an

[ 21 ]

option to purchase) was not a proper consideration. Ordinarily this argument would carry considerable weight. The integrity of comprehensive planning would be seriously compromised if a property owner could obtain a zone change on the ground that he did not own any of the land that was already zoned for the type of development he had in mind, or that his proposed development would be less profitable in an appropriately zoned area. In this case, however, * * * [t]he Board could reasonably have concluded that if the plant were not built adjacent to Bohemia's existing mill, no such plant would be built within the county, and that it was in the public interest to have such a plant constructed. * * *" 275 Or at 708-09.

However, this case is distinguishable from *Hayward* in that, in the latter, there was *in fact* only one place *anybody* could locate a new plant adjoining Bohemia's existing one. Hence, if there were a public need for the second plant, it would be practicably if not literally impossible for that need to be achieved elsewhere. The "unique location" theory is far more attenuated in this case; no one argues that only one place in the City of Portland is susceptible to development at R-10 density. Moreover, it seems clear that the Supreme Court did not intend its "unique location" holding in *Hayward* to be liberally transferable to other fact situations. The court stated that, ordinarily, the contrary argument would carry considerable weight.

■ We conclude that the applicant failed to carry its burden of proof regarding other available property and, for the same reasons the proof failed, the City's findings on that issue were inadequate and not supported by substantial evidence.

Some of the petitioners' other contentions warrant brief discussion.

■ The petitioners argue that ORS 197.275, read together with other sections in ORS chapter 197 and in light of certain language from the Supreme Court's decision in *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), prohibited the City from making a

[ 22 ]

zone change of this magnitude without first having adopted a comprehensive plan. ORS 197.275 specifically provides that, pending the adoption of a comprehensive plan, "existing planning efforts and activities shall continue." Moreover, *Baker v. City of Milwaukie* and *Braidwood v. City of Portland, supra,* necessarily contemplate the continuity of zoning actions in localities which have not yet adopted comprehensive plans.

The petitioners next argue that the city council did not comply with ORS 227.170, which provides:

> "The city council shall prescribe one or more procedures for the conduct of hearings on permits and zone changes."

At the time the proceedings in question began, the statute read somewhat differently, but not in respects material here. According to petitioners, there were no "procedural rules enunciated in advance and consistently applied." The record controverts petitioners' contention. *Cf., Anderson v. Peden,* 30 Or App 1063, 569 P2d 633 (1977), *rev allowed,* 281 Or 1 (1978).

■ Petitioners next contend that, in two respects, the "conditioning" of the zone change on the subsequent approval of a Planned Unit Development and the procedures relating to the "grant" of the PUD were legally flawed. First, the petitioners say the applicant did not comply with the established procedures of the City code for obtaining PUD approval. However, the applicant was not granted approval of a PUD; it was granted a zone change, and the ordinance granting the zone change provided that high density development on the applicant's parcel was subject to the approval of a PUD in the future. The other point of the petitioners is that the city's granting of the zone change and its making development of the parcel subject to the later approval of a PUD amounted to the approval of a "concept" or "master plan," which we construed another local government's ordinance as forbidding in *Rockway v. Stefani,* 23 Or App 639, 543 P2d 1089

[ 23 ]

(1975), *rev den* (1976). What we found objectionable in *Stefani* was the approval of an application for a PUD which was *internally* incomplete, in that the specific plans for the PUD were to be submitted by the applicant after the PUD was approved. The present situation is not comparable. The applicant as of now has obtained nothing but a zone change. The development of the rezoned tract is subject to the *later* approval of a PUD. It is true that the zone change ordinance prescribes various requirements for the PUD application, but that does not constitute approval in advance of the PUD.

■ The petitioners argue next that they were denied an impartial tribunal, and that there were ex parte contacts between the City and the applicant. The first of the ex parte contacts took the form of negotiations between the applicant and the City for the City's purchase of a different parcel from the one rezoned. (The other parcel was originally included in the application for the zone change, but was not the subject of any action by the City). The second ex parte contact of which the petitioners complain was the participation by one of the applicant's attorneys in the preparation of the city council's findings *after the council had announced its decision on the zone change.* We do not perceive how the petitioners were prejudiced by either of those contacts. The first was over a matter which was not pending before the council, and the second, in addition to occurring after the council had already decided the "contested" issue, was with a person (a city planning official) who had no control over the decision. *See Tierney v. Duris, Pay Less Properties,* 21 Or App 613, 536 P2d 435, *rev den* (1975).

In addition to the ex parte contact contention, the petitioners make a variety of arguments to the effect that the city council was biased in favor of the applicant. These arguments are based on secondary matters, such as the City's allowing a "conditional" zone change for an unlimited period of time pending

the applicant's filing of an application for a PUD. We find the arguments unpersuasive.

■ The petitioners next argue that the City was required to consider and make its action compatible with the comprehensive plans or other applicable zoning law of Multnomah County, Washington County, CRAG, and perhaps other bodies. This argument is based primarily on petitioners' understanding of our decision in *Frankland v. City of Lake Oswego,* 8 Or App 224, 493 P2d 163 (1972), *aff'd* 267 Or 452, 517 P2d 1042 (1973). We find nothing in *Frankland* which suggests that a city zoning action affecting territory within the city must comply with other local governments' zoning laws. Further, we find nothing to suggest that the City's action here was subject to CRAG's jurisdiction under the principles we enunciated in *Ruegg v. Clackamas County,* 32 Or App 77, 573 P2d 740 (1978).

■ Next, the petitioners object to the inclusion of certain economic data in the City's findings and to the city council's hearing evidence pertaining to those economic considerations, when the evidence petitioners sought to introduce relating to the financial condition of the applicant was excluded. The economic data which was considered by the city council and which was included in its findings pertained directly to the proposed development of the rezoned parcel, and not to the financial condition of the applicant. There was no error in the admission or exclusion of the evidence or in the findings.

■ The final argument of the petitioners which requires discussion is that the city council failed to abide by "generally accepted land-use planning standards," because it did not adhere to what petitioners understand the Supreme Court to have held in *Roseta v. County of Washington,* 254 Or 161, 458 P2d 405, 40 ALR3d 364 (1969), that a zone change is not permissible unless there is a change in the character of the neighborhood. Petitioners' understanding of *Roseta*

[ 25 ]

was expressly refuted by the Supreme Court in *Fasano,* where the court stated that *Roseta*

> "* * * should not be interpreted as establishing a rule that a physical change of circumstances within the rezoned neighborhood is the only justification for rezoning. The county governing body is directed by ORS 215.055 to consider a number of other factors when enacting zoning ordinances, and the list there does not purport to be exclusive. * * *" 264 Or at 585.

As earlier indicated, petitioners advance a plethora of arguments in addition to those we have discussed. They are not meritorious, and a discussion of them is not necessary to clarify the law.

The trial court's dismissal of the declaratory judgment complaint is affirmed. Its order dismissing the writ of review is reversed and remanded with instructions to remand the matter to the city council for hearings and preparation of appropriate findings on the limited issue of the availability and suitability of alternative locations for the realization of the public need already proved by the applicant.

Affirmed in part, reversed in part and remanded with instructions.

**JOHNSON, J.,** dissenting.

The majority decision reflects the ever present temptation for courts to interject themselves into the operations of the more democratic institutions in our system of government, presumably because of a perceived superior judicial wisdom. I doubt we have that wisdom and, in any event, the constitution prohibits its exercise. Our intervention here is also an example of how courts can be used, deliberately or inadvertently, to thwart the democratic process. Appellant has, as the majority states, "fired a whiff of grape shot in a 720 degree direction," and a stray shot found the target. We have remanded this case to the Portland City Council, an elected legislative body, to conduct a meaningless exercise in semantics. In spite of the

majority's logic, common sense dictates that there is no other comparable available land. Common sense further dictates the council will pro forma reaffirm its previous decision with findings, discussing other available properties. We can reasonably anticipate another whiff of grape shot aimed at that decision. After that litigation, the parties will prepare, negotiate and deliberate over the planned unit development. If approved by the city council, we can expect still another whiff. The majority perceives the underlying issue to be whether there is other available land. The city perceives the issue to be a political question of whether this large neighborhood is to be highly exclusive (20,000 square feet per single family residence) or is to have moderate density with moderate cost housing (10,000 square feet per single family residence). The issue is political and we should be reluctant to enter the arena.

For the reasons stated infra, I believe the majority has applied the wrong legal principles. I would affirm the dismissal of the writ of review because the City's decision was legislative in nature. I would also affirm the trial court's decision on the declaratory judgment action because the assignments of error were not well taken.

## The Writ of Review

The zone change proceeding concerned two parcels of property consisting of 899 acres[1] which are owned by three persons subject to a contract to purchase by a joint venture consisting of seven individual partners and two corporations. The applicants seek eventual approval of a planned unit development for the construction of 1,300 single-family residences. There are 90 plaintiffs who are landowners either in the City,

---

[1] Parcel A consists of 601 acres and parcel B consists of 298 acres. The original application sought to have both parcels rezoned. The ordinance only rezoned parcel A. The applicants gave the City an option to purchase parcel B for purposes of a public park. The option was clearly a consideration in the decision to grant the zone change.

the unincorporated area of Multnomah County, or Washington County whose property either adjoins or is near the subject parcels. Initially, Multnomah and Washington Counties, together with the City of Beaverton, were joined as party defendants, and according to plaintiff's brief, they took a position before the City Council in opposition to the zone change. Plaintiffs emphasize in their brief that all parties have taken the position throughout the proceedings, both before the City and upon judicial review, that the City's decision in this matter is a land use policy decision of major magnitude.

In *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), the court rejected the view that all zoning decisions are per se legislative, held that a zone change for a 32-acre parcel was quasi-judicial, and established certain procedural and substantive rules for the conduct of quasi-judicial land use decisions. Following *Fasano,* there have been a number of decisions which have addressed the issue of whether a land use decision is legislative or quasi-judicial. *See Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977); *Joyce v. City of Portland,* 24 Or App 689, 546 P2d 1100 (1976); *Rockway v. Stefani,* 23 Or App 639, 543 P2d 1089 (1975), *rev den* (1976); *Parelius v. Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975); *Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372, *rev den* (1975); *Culver v. Dagg,* 20 Or App 647, 532 P2d 1127, *rev den* (1975); *Millersburg Dev. Corp. v. Mullen,* 14 Or App 614, 514 P2d 367 (1973), *rev den* (1974). There has been some suggestion that the test may be largely mechanical as the majority suggests, focusing on the size of the land area and the number of parcels and landowners that are the subject of the zoning. *See Marggi, Parelius,* and *Joyce,* all *supra.*[2] Heretofore, the largest land area

[2]The application of *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973), quasi-judicial standards in this case would lead to inconsistent results. This is illustrated by *Joyce v. City of Portland,* 24 Or App 689,

[ 28 ]

that has ever been held to be the subject of a quasi-judicial decision was 400 acres. *See Rockway v. Stefani, supra.* The land area here is twice that size. In contrast, the subject land consists of only two parcels owned by three individuals. Neither of these factors, however, is determinative.

In *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977), the Supreme Court rejected a purely mechanical land-size/number-of-owners test. The court stated in a footnote:

> "The property in question is a single compact tract of land under the ownership or control of a single developer. Our references in this opinion to 'single tract' or 'single parcel' amendments are convenient ways of describing the type and scale of land-use decisions which we have treated as quasi-judicial. * * * [citing cases discussed above] We do not intend, by the use of the terms 'single tract' and 'single parcel' to adopt a test for determining when a given land-use decision is quasi-judicial rather than legislative. *A number of factors such as the size of the area affected in relation to the area in the planning unit, the number of landowners affected, and the kinds of standards governing the decision-makers may be relevant.* The decision with which we are now concerned is clearly quasi-judicial, and we find it unnecessary to formulate, in the present case, a test for making that determination." (emphasis supplied) 280 Or at 11 n.5.

The court thus rejected the concept of "single tract" or "single parcel" as being determinative, and instead directed a pragmatic analysis weighing several factors. Size alone is not determinative, but rather the inquiry must focus on "size of the area affected in relation to the area in the planning unit." The substantive policy significance of a conditional use permit

---

546 P2d 1100 (1976), wherein we affirmed the City's rezoning of approximately 842 acres of land which are immediately adjacent to the land at issue here. We held that the City's decision was legislative. The only distinction between *Joyce* and the present case is that the record there indicated there were several dozen individuals who owned property within the 842 acre tract.

for 400 acres of rural property in Clackamas County such as at issue in *Rockway v. Stefani, supra,* or 1,000 acres in Malheur County, is far different from a zone change for 900 acres of undeveloped urban property within the Portland city limits. In the former cases only a few persons may be sufficiently affected to have an interest in the outcome, and thus the decision-making process has the earmarks of the "contested case" or "quasi-judicial" type proceeding. In contrast, a decision of the magnitude at issue here inevitably attracts widespread public attention and necessarily becomes political and legislative in nature.

In *Sunnyside* the court also mentioned the "number of land-owners affected." Contrary to the majority opinion, it is clear from the context of the statement that the court was referring not only to those land-owners whose property is the subject of the zoning ordinance, but also affected adjoining landowners. Here there were at least 90 affected landowners who appeared in public opposition to the proposed zone change.

*Fasano* and *Sunnyside* do not depart from the proposition that land use policies embodied in comprehensive plans and general zoning ordinances are decisions to be made in the legislative arena, subject only to the checks and balances of the democratic political processes and minimal judicial scrutiny. The premise of *Fasano* is that many municipal land use decisions granting special exceptions, even though theoretically amendments to the comprehensive plan or general zoning ordinances nevertheless are neither basic policy decisions nor legislative in character, but rather are administrative and quasi-judicial. 264 Or at 580. The court's apparent concern and the rationale for the more stringent judicial review of certain land use decisions is that by piecemeal granting of special exceptions, basic land use policy decisions embodied in legislatively enacted comprehensive plans and general zoning ordinances may be undermined or altered

[ 30 ]

without the benefit of the political input that is attendant to the legislative process. A land use decision which affects a small parcel and a small number of people is not likely to arouse sufficient public interest to insure an adequate legislative balancing of competing political interest. In particular, the court was concerned with the "dangers of the *almost irresistible* pressures that can be asserted by private economic interests on local government" in this type of decision-making environment. 264 Or at 588. (emphasis supplied) The court obviously was *not* concerned that *some* political pressures may be asserted because such pressures are not only inevitable in legislative decision-making, they are concomitant to the democratic process. Rather the concern is that in land use decisions where there are only a few interested individuals there is a likelihood that those few can exercise pressures of "almost irresistible" proportions. The countervailing pressures that characterize legislative decisions on basic policy matters are unlikely to exist.

In the instant case conflicting and countervailing pressures obviously did exist. Unlike many zone change proceedings where the private developer is the only party appearing, here we have at least 90 individuals who appeared in opposition. Among those individuals were persons of political prominence such as a former United States senator. Three major political subdivisions expressed a position in this proceeding. The "almost irresistible" pressures which *Fasano* was concerned with were not present. Moreover, it is apparent that there were political forces other than the mere parties to this litigation who had a stake in the outcome and which the City had to consider. The City Council indicated the principal reason for authorizing the zone change was to meet long-term housing needs, *i.e.,* 1,300 single-family residences. Thus we have a decision which not only affected the parties directly, but would have a profound impact on several thousand other people. The decision to approve

[ 31 ]

or disapprove was a "general * * * policy which is applicable to an open class of individuals," a factor which the Oregon Supreme Court indicated in *Fasano* may well be controlling in determining that it is legislative in nature. 264 Or at 581, *quoting from* Comment, Zoning Amendments—The Product of Judicial or Quasi-Judicial Action, 33 Ohio St L J 130, 137 (1972).

The final and probably the most important factor expressly mentioned in *Sunnyside* is "the kinds of standards governing the decision-makers." 280 Or at 11 n.5. If a decision is characterized as quasi-judicial, then the standards of *Fasano* must apply. The burden of proof is upon the proponents of change to prove that there is a public need, and the need is best met by the proposed change as compared to other available alternatives. 264 Or at 584. This burden is only appropriate where there is an inherent danger that the democratic will may be thwarted because of "almost irresistible" pressures. Where the likelihood is that the democratic will will prevail, then *Fasano* standards are an unwarranted invasion into the legislative arena and violate the separation of powers. Legislative bodies are not expected to prove the public interest or to prove that they have weighed alternatives. They are presumed to know the public interest. Here we have a decision which proponents, opponents, and the City publicly proclaim "is a major matter of policy for the City * * * which is going to make a difference for a long period of time, 50 to 100 years, in a very large neighborhood."[3] The land in question is the largest remaining tract of undeveloped land in the western part of the City. A multitude of citizens and three political subdivisions have participated in the proceedings. An open class of several thousand people is directly affected. Separation of powers dictates that we not impose *Fasano*

<hr>

[3] The quotation is from the opening statement by proponents' counsel in the hearing before the City Council which is quoted with favor by both the plaintiffs and the City in their briefs.

requirements on the City in a decision of this nature and magnitude.

## Declaratory Judgment Suit

A legislative decision is not subject to writ of review, ORS 34.040, but is subject to limited judicial review in a declaratory judgment suit. The early zoning decisions stated that judicial review was limited to the questions of whether the legislative action was "arbitrary or capricious." *See, e.g., Jehovah's Witnesses v. Mullen,* 214 Or 281, 295, 330 P2d 5 (1958). I interpret those cases as meaning that courts review for constitutional error. The reference to "arbitrary or capricious" is merely a restatement of the due process standard that is applied to any legislative act. *See, e.g. Roseta v. County of Washington,* 254 Or 161, 458 P2d 405 (1969), and cases cited therein, 254 Or at 164 n.2. More recent, but pre-*Fasano* cases indicate that a more stringent standard of judicial review is applicable in cases of "spot zoning." *See Roseta v. Washington County,* supra; *Smith v. County of Washington,* 241 Or 380, 406 P2d 545 (1965). "Spot zoning" by definition is now treated as quasi-judicial. *See Fasano v. Washington Co. Comm.,* supra. *Roseta* and *Smith* are merely the predecessors of *Fasano* and are not authority for delineating the scope of review of legislative acts of the nature at issue here. Although not mentioned in the early zoning cases, it is also clear that judicial review of local government and legislative actions encompasses compliance with local government charters and state law. In summary, judicial review of legislative land use decisions is limited to the question of whether the decision complies with the constitution, local government charter, or state statute. Plaintiffs make five contentions, which appear to be directed at these considerations.

(1) Plaintiffs suggest that the change in zoning from R-20 to R-10 constitutes an unconstitutional classification, or is arbitrary in violation of due process. The express finding in the ordinance that there is

a need for additional medium-priced housing within the City of Portland satisfies the "minimum rationality" test. *See Clackamas County v. Ague, supra.*

(2) Plaintiffs contend that since the City has not yet adopted a comprehensive plan, it is precluded by ORS 197.275[4] from making any zone changes. That statute merely provides that comprehensive plans and zoning, subdivision, and other ordinances adopted prior to October 5, 1973, shall remain in effect until revised in accordance with the applicable provisions of Senate Bill 100, Oregon Laws 1973, ch 80. Plaintiffs suggest that until a plan is adopted, there is a moratorium on all zone changes. To the contrary, ORS 197.275 merely requires that any zone changes made during the period prior to the adoption of the comprehensive plan must generally be in compliance with ORS ch 197, and in particular with the state-wide planning goals. *See Sunnyside Neighborhood v. Clackamas Co. Comm., supra; In the Matter of the Petition of Iris M. Felter and Paul R. Meyer,* LCDC Appeal No. 75-003.

_____

[4]ORS 197.275 provides:

"(1) Comprehensive plans and zoning, subdivision, and other ordinances and regulations adopted prior to October 5, 1973, shall remain in effect until revised under ORS 197.005 to 197.430 and 469.350. It is intended that existing planning efforts and activities shall continue and that such efforts be utilized in achieving the purposes of ORS 197.005 to 197.430 and 469.350.

"(2) After the commission acknowledges a city or county comprehensive plan and implementing ordinances to be in compliance with the goals pursuant to ORS chapter 197 and any subsequent amendments to the goals, the goals shall apply to land conservation and development actions and annexations only through the acknowledged comprehensive plan and implementing ordinances unless:

"(a) The acknowledged comprehensive plan and implementing ordinances do not control the action or annexation under consideration; or

"(b) Substantial changes in conditions have occurred which render the comprehensive plan and implementing ordinances inapplicable to the action or annexation.

"(3) As used in this section, 'annexation' means the annexation of unincorporated territory by a city pursuant to ORS 222.111 to 222.750 and the formation of an annexation of territory to any district authorized by ORS 451.010 to 451.600.

(3) Plaintiffs contend that the City failed to comply with former ORS 227.170.[5] It is clear from the definitions of "contested case" and "hearing," as provided in former ORS 227.160,[6] that former ORS 227.170 has no application to a legislative action of the nature at issue here.

(4) Plaintiffs argue that the City displayed "favoritism" toward the applicants in violation of former ORS 227.240(2). That statute required that regulations relating to the height and bulk of buildings and the size of yards and other open spaces "be uniform for each class of buildings throughout each [zoning] district."[7] The zone change ordinance at issue here

---

[5] ORS 227.160 and 227.170 were amended in 1975 subsequent to the adoption of the subject zone change. Former ORS 227.170 provided:

"The city council of a city, by ordinance or rule, shall adopt a procedure for the conduct of hearings. The procedure shall be applicable to all requests for permits and to the determination of contested cases."

[6] Former ORS 227.160 provided:

"As used in ORS 227.160 to 227.180 unless the context requires otherwise:

"(1) 'Contested case' means a proceeding in which the legal rights, duties or privileges or specific parties under general rules or policies provided under ORS 227.230, or any ordinance, rule or regulation adopted pursuant thereto, are required to be determined only after a hearing at which specific parties are entitled to appear and be heard.

"(2) 'Hearing' means a quasi-judicial hearing, authorized or required by the ordinances and regulations of a city adopted pursuant to ORS 227.230:

"(a) To determine in accordance with such ordinances and regulations if a permit shall be granted or denied; or

"(b) To determine a contested case.

"(3) 'Hearings officer' means a planning and zoning hearings officer appointed or designated by a city council under ORS 227.165.

"(4) 'Permit' means authority or approval of a proposed use of land for which approval is a matter of discretion and is required pursuant to ORS 227.230, or any ordinance, rule or regulation adopted pursuant thereto, and the term includes, but is not limited to, conditional use, special exceptions, variance, special design zone and other similar permits."

[7] Former ORS 227.240 provided:

"(1) For each district provided for by subsection (1) of ORS 227.230, regulations may be imposed designating the class of use that

merely provides for a conditional zone change from R-20 to R-10. We can only discern from the record that the height and bulk of buildings, etc., is governed uniformly by the applicable city zoning ordinances. See, *e.g.,* Portland, Ore., Code § 33.22.010 *et seq* (1969). Plaintiffs do not indicate how the alleged favoritism violated former ORS 227.240.

(5) Plaintiffs assert without any specificity that the zone change violates the comprehensive plans of Washington County and the City of Beaverton and "the projections for comprehensive planning" by Multnomah County. The City is solely responsible for land use planning within its boundaries subject to compliance with the state-wide planning goals. ORS 197.175, 197.190, 215.130. Plaintiffs make no contention that the plan violates state-wide planning goals. *See in the Matter of the Petition of Iris M. Felter and Paul R. Meyer, supra* (holding that the subject zone change conformed to the interim state-wide planning goals, former ORS 215.515). Plaintiffs also contend

shall be excluded or subjected to special regulations and designating the uses for which buildings may not be erected or altered, or designating the class of use which only shall be permitted. These regulations shall be designed to promote the public health, safety and general welfare. The council shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development in accord with a well considered plan.

"(2) The regulations provided for by subsection (2) of ORS 227.230 *shall be uniform for each class of buildings throughout each district.* The regulations in one or more districts may differ from those in other districts. The regulations shall be designed to secure safety from fire and other dangers and to promote the public health and welfare, and to secure provision for adequate light, air and reasonable access. The council shall pay reasonable regard to the character of buildings erected before May 29, 1919, in each district, the value of the land, and the use to which it may be put to the end that the regulations may promote public health, safety and welfare." (emphasis supplied)

Former ORS 227.230(2) provided:

"The council may place reasonable regulations and limitations upon the height and bulk of buildings erected after May 29, 1919, and regulate and determine the area of yards, courts and other open spaces having due regard of the use and occupancy in such case."

that the trial court erred in failing to consider evidence of planning actions taken by these three jurisdictions and also the Columbia Region Association of Governments (CRAG) subsequent to enactment of the subject zone change. For the reasons stated above, the evidence concerning Multnomah County, Washington County, and the City of Beaverton is irrelevant. As to CRAG's planning actions, the evidence was irrelevant for the reasons stated in *Ruegg v. Clackamas County,* 32 Or App 77, 573 P2d 740 (1978).

The demurrer to the declaratory judgment action was properly sustained.[8]

I respectfully dissent.

---

[8] It is technically questionable whether a demurrer will lie in a declaratory judgment action. I address the issue as whether, based upon the arguments made by plaintiffs on appeal, the suit for declaratory judgment should have been dismissed for failure to state grounds for declaratory relief.