Argued and submitted June 25, reversed December 4, 1979,
petition for rehearing denied by opinion February 26, 1980
See 288 Or 585, 607 P2d 722

NEUBERGER, et al,
*Respondents,*
*v.*
CITY OF PORTLAND, et al,
*Petitioners.*

(CA 7976, SC 25945)

603 P2d 771

Stephen T. Janik, Portland, argued the cause for all
petitioners. With him on the briefs were Jennifer L.

Johnson, Gregory R. Mowe, and Davies, Biggs, Strayer, Stoel and Boley, Portland, for petitioners Homer G. Williams, Roland A. Haertl, Alan G. Quasha, Wayne Quasha and Jill Quasha, Co-partners doing business as Wilbihama Investors, Oroc Lands (Oregon), Inc., an Oregon corporation; Oroc Lands, Ltd., a Hong Kong corporation; Wilbihama Investors and Oroc Lands, Ltd., a joint venture; Walter Lommell, Jr., Trustee; and Ed E. Meier.

Thomas R. Williams, Deputy City Attorney, Portland, and Christopher P. Thomas, City Attorney, Portland, filed a brief for City of Portland petitioners.

Paul R. Meyer of Kobin & Meyer, Portland, argued the cause and filed briefs for respondents.

Richard P. Benner, Portland, filed an amicus curiae brief for 1000 Friends of Oregon.

Before Denecke, Chief Justice, and Tongue, Howell, Linde and Peterson, Justices.

HOWELL, J.

## HOWELL, J.

This case involves the rezoning by the City of Portland of a 601-acre parcel of undeveloped land in the northwest part of the city from R-20 (single-family residence—20,000 square feet) to R-10 (single-family residence—10,000 square feet). The trial court upheld the rezoning. On appeal by opponents of the rezoning decision, the Court of Appeals held that the decision was quasi-judicial and was, therefore, properly reviewable by writ of review.[1] It also held that, although none of the rest of the opponents' 42 assignments of error were well taken, the opponents were correct in their contention that the applicants for the change failed to carry their burden of proof that the public need for higher density residential development would best be served by changing the classification of the parcel in question as compared with other available property.

The Court of Appeals directed that the matter be remanded to the city council for hearings and findings "on the limited issue of the availability and suitability of alternative locations for the realization of the public need already proved by the applicant." *Neuberger v. City of Portland,* 37 Or App 13, 26, 586 P2d 351 (1978). The applicants and the council[2] petitioned for review

---

[1] ORS 34.040 provides:

"The writ shall be allowed in all cases where the inferior court, officer, or tribunal * * * in the exercise of judicial or quasi-judicial functions appears to have:

"(1) Exceeded its or his jurisdiction;

"(2) Failed to follow the procedure applicable to the matter before it or him;

"(3) Made a finding or order not supported by reliable, probative and substantial evidence; or

"(4) Improperly construed the applicable law; to the injury of some substantial right of the plaintiff, and not otherwise. The fact that the right of appeal exists is no bar to the issuance of the writ."

[2] The petition for the writ named as respondents the City of Portland, the individual members of the city council, and the individual applicants for the change including both the holders of the record title and the

*(Continued on following page)*

[157]

contending that the rezoning decision was legislative rather than quasi-judicial as held by the Court of Appeals, and that the Court of Appeals incorrectly applied the so-called "other available property test." We granted review because the case raises significant questions about the application and continuing validity of certain aspects of our decision in *Fasano v. Washington Co. Comm.,* 264 Or 574, 507 P2d 23 (1973).

## *The nature of the rezoning decision.*

Under the terms of ORS 34.040, quoted in note 1, *supra,* the writ of review is available only to obtain review of judicial or quasi-judicial functions. If, therefore, the council's action was legislative, as the applicants and the council contend, rather than quasi-judicial as the Court of Appeals held, this writ of review proceeding was not properly before the circuit court.

In *Fasano* we rejected what we said at that time was the rule in a majority of jurisdictions that when a zoning ordinance was amended at the instance of the owner of the land to which the amendment applied, that action was, like the enactment of an ordinance of general application, "a legislative act and * * * thereby entitled to presumptive validity." 264 Or at 579. We stated our reason for that rejection as follows:

> "At this juncture we feel we would be ignoring reality to rigidly view all zoning decisions by local governing bodies as legislative acts to be accorded a full presumption of validity and shielded from less than constitutional scrutiny by the theory of separation of powers. Local and small decision groups are simply not the equivalent in all respects of state and national legislatures. There is a growing judicial recognition of this fact of life:

*(Continued from previous page)*
individuals and organizations who have option or contract interests in the land and who plan to develop it. For the sake of brevity we will refer to the council and the applicants collectively.

[158]

" 'It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi-judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government.' *Ward v. Village of Skokie,* 26 Ill 2d 415, 186 NE2d 529, 533 (1962) (Klingbiel, J., specially concurring." 264 Or at 580.

We went on to describe the consequences of the distinction we were making as follows:

"Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test." *Id.* at 580-81.

We then addressed the question of the nature of that "altogether different test" and concluded that the proponent of a zoning amendment which would change the permissible use of a specific piece of property must prove that the change was in conformance with the comprehensive plan. To do this, we said,

" * * * the proof, at a minimum, should show (1) there is a public need for a change of the kind in question, and (2) that need will be best served by changing the classification of the particular piece of property in question as compared with other available property." *Id.* at 584.

Our holding rested upon our conclusion that a county's power to zone had been conditioned by the legislature upon the conformity of zoning ordinances to a comprehensive plan. We held, in other words, that zoning changes of the kind before us in that case necessarily involved fact finding and the application of general policy as embodied in the comprehensive plan to a

[159]

discrete situation and were, therefore, quasi-judicial rather than legislative in nature.

The reasoning in *Baker v. City of Milwaukie,* 271 Or 500, 533 P2d 772 (1975), suggests that the same rationale would apply to similar zoning amendments by cities, although the issue was not before the court in that case. Language in *Frankland v. City of Lake Oswego,* 267 Or 452, 460, 517 P2d 1042 (1973), indicates that we have so assumed, and the Court of Appeals has applied the *Fasano* requirements in cases involving amendments to city zoning ordinances and comprehensive plans. *See, e.g., Duddles v. City Council of West Linn,* 21 Or App 310, 535 P2d 583 (1975); *S. Cen. Assn. of Neighbors v. Lindsey,* 21 Or App 578, 535 P2d 1381 (1975).

The opinion in *Fasano* assumed that the exercise of "administrative, quasi-judicial, or judicial" authority is readily recognized as such, and proceeded to examine the criteria applicable to zone change decisions of that kind and, in addition, to offer some "brief remarks on questions of procedure." 264 Or at 588. Since *Fasano,* both this court and the Court of Appeals have repeatedly been called upon to distinguish quasi-judicial from legislative land-use decisions.[3] In the present case, however, the applicants and the council have argued vigorously that the Court of Appeals applied the wrong test and reached the wrong result when it refused to characterize the zone change in this case as legislative.

The Court of Appeals held that

" * * * a zone change proceeding is necessarily quasi-judicial when it is undertaken at the instance

---

[3] *See especially Petersen v. City of Klamath Falls,* 279 Or 249, 566 P2d 1193 (1977); *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 569 P2d 1063 (1977); *Joyce v. City of Portland,* 24 Or App 689, 546 P2d 1100 (1976); *Rockway v. Stefani,* 23 Or App 639, 543 P2d 1089 (1975) *rev den* (1976); *Parelius v. Lake Oswego,* 22 Or App 429, 539 P2d 1123 (1975); *Aukland v. Bd. of Comm. Mult. Co.,* 21 Or App 596, 536 P2d 444, *rev den* (1975); *Marggi v. Ruecker,* 20 Or App 669, 533 P2d 1372, *rev den* (1975); *Culver v. Dagg,* 20 Or App 647, 532 P2d 1127, *rev den* (1975); *Millersburg Dev. Corp. v. Mullen,* 14 Or App 614, 514 P2d 367 (1973) *rev den* (1974).

of a single applicant or a combination of applicants with united interests in the parcel they seek to have rezoned." 37 Or App at 16.

The council and the applicants contend that this holding is in conflict with our decision in *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 11 at note 5, 569 P2d 1063 (1977), where we said:

" * * * We do not intend, by the use of the terms 'single tract' and 'single parcel' to adopt a test for determining when a given land-use decision is quasi-judicial rather than legislative. A number of factors such as the size of the area affected in relation to the area in the planning unit, the number of landowners affected, and kinds of standards governing the decision-makers may be relevant. The decision with which we are now concerned is clearly quasi-judicial, and we find it unnecessary to formulate, in the present case, a test for making that determination."

It is clear from the quoted language that we did not, as argued in the petition for review, hold that any particular factors were to be considered in determining whether a decision was legislative or quasi-judicial. We expressly refused in that case to adopt any test whatsoever, leaving that task to the future should it become necessary.

Since the Court of Appeals decision in the present case we have considered, in another context, the problem of how to identify a quasi-judicial determination. The question there, as here, was whether the writ of review was the proper mode of review of a local government decision. *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* 287 Or 591, 601 P2d 769 (1979). As we pointed out there, our land use decisions indicate that when a particular action by a local government is directed at a relatively small number of identifiable persons, and when that action also involves the application of existing policy to a specific factual setting, the requirement of quasi-judicial procedures has been implied from the governing law.

[161]

Although both of these factors are frequently present in the cases in which we have held or assumed that quasi-judicial functions were exercised, each is, as we noted in *Strawberry Hill,* a separate indicator of the possible need for adjudicatory procedures. The reasons, moreover, are different in each instance.

When specific facts must be determined in order that pre-existing criteria may be applied, procedures similar to those used in adjudications are important in order to assure that factual determinations will be made correctly. When the requirement of such procedures is implied because a relatively small number of persons is directly affected, even though the decision-maker is not entirely bound by pre-existing criteria but is empowered to exercise broad discretion, the law may require a formal hearing procedure, we said,

> " * * * to provide the safeguards of fair and open procedures for the relatively few individuals adversely affected, in lieu of the political safeguards on which our system relies in large scale policy choices affecting many persons." 287 Or at 603-04.

A third consideration mentioned in *Strawberry Hill* is whether the process is bound to result in a decision. Although that factor is rarely discussed in the cases because in many contexts its presence is readily apparent, it was not so obvious in *Strawberry Hill* or in the recent case of *Henthorn v. Grand Prairie School Dist.,* 287 Or 683, 601 P2d 1243 (1979). In *Henthorn* the determination that the school board was required to make a decision on the basis of information produced at a hearing required by statute was important to our conclusion that the proceedings were quasi-judicial and, therefore, subject to judicial review under the writ of review.

In the present case, the governing ordinance contemplates procedures which are, at least to some extent, quasi-judicial. The municipal code in effect at the time of the zone change distinguishes between zone changes initiated by the planning commission or the

[162]

city council on the one hand, and changes initiated by petition of the owners of the affected property on the other. If the petition meets certain requirements, the council has "jurisdiction to hear, consider and determine the matter." City of Portland Municipal Code, Title 33 Planning and Zoning § 33.102.020(8). A decision may be reached only after a hearing of which the owners and certain other affected persons are entitled to mailed notice and at which, by necessary implication, they are entitled to appear and to be heard.

The provision for "jurisdiction" in the council to "hear, consider, and determine" indicates that the city intended that all proceedings for zone changes initiated by petition of the owners of the affected property be treated as quasi-judicial. The provisions for individual notice and a hearing support that reading of the code although, as we pointed out in *Strawberry Hill,* statutes or ordinances may require such procedures in connection with purely discretionary or "legislative" acts of limited compass in order to serve the purposes normally served by political accountability of legislators.

The code also indicates that once zone change proceedings are properly initiated by landowners, they must not only be conducted with certain quasi-judicial procedures but also in addition they must result in action either granting or denying the petition. Although this strongly suggests that a quasi-judicial function is being performed, it is not conclusive. In such cases we also consider whether the action to be taken is the result of a relatively free choice among competing policies or requires, on the other hand, sufficient fact-finding and application of existing policy in that factual setting to qualify, for purposes of the writ of review, as quasi-judicial.

Of the factors identified in *Strawberry Hill,* this one has caused the parties the greatest concern. The applicant and the council contend that the council's decision constituted the creation rather than the application of

policy, but we conclude after reviewing the record that both kinds of decision-making were involved in the council's deliberations.

Under the circumstances that is not surprising. The proponents of the change want the land zoned for more intensive residential use because they seek eventual approval of a planned development of more than a thousand dwelling units. As with any large development, questions about such things as the provision of municipal services, the impact on the neighborhood and the school system, and the adequacy of the road system had to be considered. The provision of services, should the entire area be developed as the applicants now envision, will involve other governmental jurisdictions as well as the City of Portland. The council was, therefore, necessarily concerned about intergovernmental relationships. Moreover, the property involved is in an area for which Portland has not as yet developed a comprehensive plan. For all of these reasons, the Portland City Council necessarily was involved with the making as well as the application of policy when it considered this zoning change proposal.

The fact that policy decisions had to be made is not, however, determinative. Large-scale decisions of specific applicability frequently, if not inevitably, require of the decision-maker both the creation and the application of policy. *Cf., Marbet v. Portland Gen. Elect.,* 277 Or 447, 460, 561 P2d 154 (1977). And there is no doubt that this decision did require the council to apply existing policy to a specific factual setting.

The opponents of the change argued in the trial court and the Court of Appeals that the City should be required to formulate and adopt a comprehensive plan before the council could consider the zone change in question here. The Court of Appeals properly rejected that argument. *See* 37 Or App at 22-23.[4] There were,

_____

[4] Prior to 1973 cities were not required to adopt a comprehensive plan. In 1973 the legislature adopted such a requirement and in 1977 provided a procedure for LCDC review of such plans for compliance with the statewide
*(Continued on following page)*

then, no such city-adopted criteria as a comprehensive plan normally provides by which the council was required to test the zone change proposal. The council was not, however, called upon to act without reference to any criteria whatsoever.

At the time of this decision, ORS 227.220 (since repealed, Or Laws 1975, ch 767, § 10) required cities to exercise their zoning authority

"[F]or the public interest, health, comfort, convenience, preservation of the public peace, safety, morals, order and the public welfare * * *"

and ORS 227.240 (since repealed, Or Laws 1975, ch 767, § 10) directed cities, in specifying permissible uses in zoning regulations to

"give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of building development in accord with a well considered plan."

In addition to these general considerations in the zoning enabling statutes, the statewide planning goals promulgated by the Land Conservation and Development Commission stated policies which the city was required, to the extent they were relevant, to apply. ORS 197.225; *Sunnyside Neighborhood v. Clackamas Co. Comm., supra* 280 Or at 16-18. *Cf.,* ORS 197.275(2).[5] In particular, individual statewide goals speak to the conservation of open space, development in areas of natural hazards, provision for a variety of housing needs, provision of public facilities and services, and provision for a "safe, convenient and economic" transportation system.

<hr>

*(Continued from previous page)*

planning goals. Or Laws 1973, ch 80, §§ 18, 32; Or Laws 1977, ch 766, § 18. The statutes provide a deadline for compliance of the plans with the goals, and also authorize LCDC to grant extensions of time.

[5] The opponents of the zone change have argued to this court that the City did not consider any of the applicable statewide goals. That contention was not, however, made the subject of an assignment of error in the Court of Appeals or of a petition to this court for review, and we do not consider it.

Insofar as the city attempted, or should have attempted, to apply such existing policies, its action was quasi-judicial and is reviewable by way of writ of review. Under the writ, the council's exercise of its legislative prerogatives is not before the court. *Strawberry Hill 4-Wheelers v. Benton Co. Bd. of Comm.,* *supra* at 601-02, 606.[6] In the petition for review the applicants argue that by this decision the city has

> "* * * in effect, articulated the policy that on large vacant land areas close to the central business district moderate cost housing, affordable by middle income family [sic], should be encouraged."

If, in fact, such a policy of general application was adopted by the council, the opponents have not attacked the adoption of that policy but rather its application to the specific parcel in question.

The Court of Appeals was correct in holding that the council, in this proceeding, was exercising quasi-judicial functions which were reviewable under the writ of review. The opponents of the zone change have not asked the courts to invalidate any policy of general application. We conclude that the issues raised were properly before the Court of Appeals.

## *The "other available property" test*

As we have described above, the Court of Appeals held that the applicants in this case had not carried their burden of proof that the existing public need for more intensive residential development than was permitted by the original zoning classification would best be served by changing the classification on this property "as compared with other available property." The

---

[6] The opponents also filed a complaint seeking a declaratory judgment. The two cases were ordered consolidated, and a demurrer to the declaratory judgment complaint was sustained after the trial judge ruled that the writ of review would lie and that were the opponents successful under the writ they would obtain the same relief that they were seeking in the declaratory judgment proceeding. We have examined that complaint and conclude that none of the allegations in support of a declaratory judgment raise the contention that the council, to the extent that it acted in its legislative role, acted improperly. The allegations are virtually the same as those in the petition for the writ of review and attack the council's performance of its quasi-judicial functions.

requirement that they carry that burden was stated in our opinion in the *Fasano* case as a part of the require- ment, implied from the applicable statutes, that a change of zone be shown to be in conformance with the local comprehensive plan. The other component of that requirement, as stated in *Fasano,* was that the propo- nent show a public need for a change of the kind in question. 264 Or at 584.

When we granted review, because of concern with the continuing viability as well as the Court of Appeals' application of the requirement of comparison with other available property, we asked the parties to respond in memoranda to the following question:

> "Under the statutes, LCDC goals, and local enact- ments applicable to this case, is the proponent of a zone change required to show 'public need' and com- parison with 'other available property,' believed by this court to be required in the situation before it in *Fasano v. Washington Co. Comm., supra?* Is the analysis affected by the existence or absence of a comprehensive plan? If the applicable law requires such a showing, what criteria govern whether other undeveloped property is 'available'?"

We also requested 1000 Friends of Oregon to respond, as amicus curiae, to this question.

In *Fasano* we stated this twofold test in an attempt to give meaningful content, in the context of a land- owner's request for a change of zone, to the implied requirement that zoning be accomplished in conform- ance with a comprehensive plan. At the time that case was decided there was little or no legislative guidance as to how that requirement was to be applied in specif- ic cases. At that time most courts, including our own, had on the one hand characterized zone changes as legislative action, clothed with a "presumption" of validity, while on the other hand they sometimes in- validated zone changes which they considered wholly unjustified under the rubric of "spot zoning." *See, e.g., Smith v. County of Washington,* 241 Or 380, 406 P2d

[167]

545 (1965), discussed in Comment, Municipal Corporations—Zoning—Spot Zoning Ordinances and Their Validity, 46 Or L Rev 323 (1967).

*Fasano* was unquestionably a significant departure from prior approaches to judicial review of zone changes in this state. That decision has been the beginning point for many of the contentions raised in land use decisions which reach the Oregon appellate courts. As a consequence, there is now a considerable body of case law refining and elaborating upon what we said there.

The developing case law has not, however, been the only source of guidance in this area since the date of the *Fasano* decision. Beginning in that same year, the legislature has taken a very active role in the field of land use regulation. It has required all cities as well as counties to engage in land use planning, and has created a state agency, the Land Conservation and Development Commission, to prescribe criteria for and to supervise local planning efforts. Since 1973, every session of the legislature has produced significant legislation dealing with local planning. The concern thus demonstrated by the legislature, as well as the language of the resulting enactments, is important to evaluations of the continuing applicability of specific statements in judicial decisions.

As this court said in *Anderson v. Peden*, 284 Or 313, 587 P2d 59 (1978):

"Zoning law is not common law but a branch of state and local legislation and administrative law, created by particular statutes, rules, charters, comprehensive plans, ordinances, and resolutions * * *." 284 Or at 315.

At the time of our decision in *Fasano* the existing legislation did not spell out with any particularity the conditions governing zone changes. The legislature had, until that time, been content to leave the problem to the courts. That is no longer the case.

Legislation enacted by the 1975 Legislature provides that a city shall not approve a landowner's application for a zone change unless the proposed development would be in compliance with the city's comprehensive plan. ORS 227.175(3). Although that legislation was not in effect on the day the rezoning ordinance in this case was approved, it does indicate that the legislature had given attention, prior to that date, to the problem of the prerequisites for such a zone change and had chosen to require only conformity to the comprehensive plan. There is no mention in the statute of a specific additional showing of public need or of the consideration of other available property.

The statewide planning goals, promulgated under legislative mandate by the Land Conservation and Development Commission, also speak to the problem of zoning amendments. *See* OAR 660-15-000. Goal No. 2, "Land Use Planning," provides in part:

"All land use plans and implementation ordinances shall be adopted by the governing body after public hearing and shall be reviewed and, as needed, revised on a periodic cycle to take into account changing public policies and circumstances, in accord with a schedule set forth in the plan."

Guideline No. 5 to that goal addresses both major revisions of and minor changes in the comprehensive plan and implementation ordinances. "Minor changes," it says, should be supported by a factual showing and the "public need and justification for the particular change should be established."

Although LCDC's goals are binding on local authorities, the guidelines are advisory only. ORS 197.015(7),(8). The LCDC goals and guidelines were formulated after the *Fasano* decision and the Commission undoubtedly had that case in mind during the drafting process. We find it significant that the Commission, under those circumstances, made no mention whatsoever in Goal No. 2 of a requirement that the site of a proposed zone change be compared with other

available property. The Commission did express its concern that certain amendments ought to be supported by a factual showing of "public need," but chose to express that concern as a guideline or suggestion rather than to incorporate it in a mandatory rule or goal.

We find, then, no statutory or LCDC requirement that a showing of either public need or a comparison with other available property is a specific and independent prerequisite to a zoning amendment. In light of the continuous legislative and agency attention to the planning and zoning process since the *Fasano* decision, we conclude that the legislature and LCDC have not found it necessary to impose such requirements.

That is not to say, however, that the considerations which they embodied are irrelevant. Under the present legislative scheme, each local government must adopt a comprehensive plan which is in compliance with the LCDC goals, and adopt zoning and other ordinances to implement it. Once the plan and its implementing ordinances have been adopted and have been acknowledged by LCDC to be in compliance with the goals, zoning amendments and other land use decisions will be governed by criteria in the plan and related ordinances or, in cases in which those criteria do not apply, by the goals themselves. ORS 197.275(2). Statutes may contain additional criteria governing certain land use decisions. *See, e.g.,* ORS 215.213, 215.253. The applicable considerations and criteria in such rules and enactments are the legislative and administrative expression of what constitutes "public need." *See Sunnyside Neighborhood v. Clackamas Co. Comm., supra,* 280 Or at 14. And a comparison of the characteristics of the site under consideration with other property which is available for the proposed use may well be relevant in determining whether particular requirements of the comprehensive plan, LCDC goals, or other applicable standards have or have not been met.

The opponents of the change, in their memorandum in response to questions asked by this court, contend that the Court of Appeals decision was erroneous in certain other particulars. The opponents did not file a petition for review or otherwise raise those contentions until after we had granted the petition filed by the council and the applicants and requested memoranda and argument on other questions entirely. We do not consider them.

That portion of the Court of Appeals decision remanding the case for further proceedings is reversed, and the decision of the trial court is affirmed.