Argued and submitted December 7, 1979,
reversed and remanded February 19,
respondent City of Gold Hill's reconsideration allowed,
former opinion modified; affirmed (45 Or App 797, 609 P2d 847)
April 14, appellants' reconsideration denied May 29,
appellants' petition for review allowed September 3, 1980

MENGES, et al,
*Appellants,*

*v.*

BOARD OF COUNTY COMMISSIONERS
OF JACKSON COUNTY, et al,
*Respondents.*

(No. 78-3111, CA 14406)

606 P2d 681

[603]

Frank J. Van Dyke and E. R. Bashaw, Medford, argued the cause for appellants. On the briefs was Frank J. Van Dyke, Medford.

William G. Carter, Medford, argued the cause for respondent City of Gold Hill. With him on the brief was Grant, Ferguson & Carter, Medford.

Thomas J. Owens, Medford, waived appearance for for respondent Jackson County.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

**JOSEPH, P.J.**

Petitioners brought this writ of review proceeding to contest various actions and the decision of the Jackson County Hearings Council and Board of County Commissioners (Board) in granting the city of Gold Hill a conditional use permit to construct a sewage treatment facility on a 3.46 acre parcel in an area zoned F-5 (farm-residential; 5-acre minimum lot size). Petitioners own homes or reside in the area of the proposed facility site. They appeal from the trial court's order affirming the Board's decision. We reverse.

Petitioners advance six arguments, which will be described in the course of our discussions. Their first argument is that, as a matter of law, the conditional use permit to build the treatment facility on an undersized parcel violated the county zoning ordinance. Article III, section 4.3(8) of the ordinance provides that conditional use permits in an F-5 zone can be granted for "use of a public works, public service or public utility nature." Section 4.5 of the same Article provides that conditional uses of the kind described in section 4.3 can take place on a parcel of less than five acres if it is found that the use:

"1) Does not interfere seriously with accepted farming practices on adjacent lands devoted to farm use, and

"2) Does not materially alter the stability of the overall land use pattern of the area, and

"3) Is situated upon land generally unsuitable for the production of farm crops, considering the terrain, adverse soil or land condition, drainage and flooding, vegetation, location, and size of the tract."

The Board adopted the Hearings Council's conclusion

"*** that a reduced parcel size of 3.46 acres (instead of the five acre minimum which is required in the Farm Residential (F-5) Zoning District) is justified because: requiring the City of Gold Hill to acquire five acres of land for the proposed site would

[605]

force them to purchase 1.54 acres of land which is not needed for the facility and it would result in the acquisition of 1.54 acres of land which otherwise would remain in productive farm use. \*\*\*"

The petitioners argue, in essence, that the allowance of a conditional use permit for the sewage facility on the undersized parcel is equivalent to granting conditional use permits to persons who need less than five acres for residential purposes and that the Board's action is in direct conflict with the ordinance. We disagree. The ordinance expressly allows the granting of conditional use permits for development of reduced size parcels for public service and public utility projects. The petitioners' reliance on *Rutherford v. Armstrong*, 31 Or App 1319, 572 P2d 1331 (1977), *rev den* (1978), is misplaced. We there interpreted ORS 215.213(3)[1] as prohibiting a variance for the construction of a residence on an undersized parcel in an agricultural zone. Here, however, the more apposite statutory provision is ORS 215.213(1)(d), which provides that "[u]tility facilities necessary for public service" are among the "nonfarm uses [which] may be established in any area zoned for exclusive farm use." The granting of the conditional use permit to build the facility on an undersized parcel was not only consistent with the ordinance and with the state statute; it also reflected an adherence by the Board to the state policy of preserving land for agricultural use. ORS 215.213; Statewide Planning Goal No. 3.

Petitioners' second and third contentions are, respectively, that there was insufficient evidence to support a finding of lack of injury to nearby property from construction of the proposed treatment facility and that the Board made no such finding of fact.

---

[1] ORS 215.213 and certain other statutes which are discussed in this opinion were amended by the 1979 Legislature. The County proceedings in question occurred before those amendments took effect, and the statutory references and analysis in this opinion relate to the statutes in effect at the time of the County's action.

Article VI, section 1.2 of the zoning ordinance requires for a conditional use permit to be granted that the Hearings Council must find:

"1)   That the use will not be injurious to property and improvements in the area of the request.

"2)   That the use will not be detrimental to the health, safety or general welfare of persons residing or working in the area where the proposed use would be located."

Although petitioners formulate their contentions in terms of a complete failure by the city to prove and the county commissioners to find that there would be no injury to property in the area, the only specific omissions about which the petitioners complain are of evidence and a finding that the sewage treatment facility would not result in a diminution of the market value of the property. Assuming *arguendo* the correctness of petitioners' premise that diminution of market value can be evidentiary of or relevant to the issue of injury to property under the ordinance, we do not accept the next step in their syllogism:  An applicant for a conditional use permit and the body deciding whether to grant the permit must have evidence and make findings regarding market value in order to support lack of injury. Reduced to essentials, petitioners' second and third contentions presuppose that an ultimate fact cannot be proved or found absent evidence bearing on *each and every* subissue which might be relevant to the fact. We reject that presupposition.

Petitioners' fourth argument relates to the *homeowners'* ability to present evidence of diminished market value under the procedures followed by the county. At the Hearings Council level, the city introduced some evidence that the construction of the facility in the area would not result in significant reductions of market values. Residents of the area testified, contrary to the evidence presented by the city, that they anticipated a substantial impact on the value of their property. The Hearings Council advised

the homeowners that expert testimony was necessary to prove their proposition. However, as stated in petitioners' brief:

> "[T]he hearings council had indicated that the homeowners should supply lack of evidence on the point, but determined that the hearing process before them should not be delayed for this purpose, on the theory that such evidence could be prepared for a hearing before the board of commissioners on appeal.
>
> "The homeowners, unrepresented by an attorney, did not ask for any postponement, and submitted to the point of view expressed by the hearings council."

Thereafter, when the petitioners attempted to present expert testimony on market value to the Board, the evidence was not received.

Petitioners argue that the net effect was to deny them a fair opportunity to present evidence of diminution of value. They contend further that the Board's refusal to hear the testimony of the homeowners' experts contravened ORS 215.422(1) that provides, as pertinent, that "[a]n appeal or review proceeding shall be based upon, *but not limited to*, the record of the hearings officer's action." (Emphasis added.) The city argues that ORS 215.422(1) did not *require* that additional evidence be taken by the Board and that due process does not require a plenary hearing before *both* the Hearings Council and the Board. For the latter proposition, the city relies on our decisions in *West v. City of Astoria*, 18 Or App 212, 524 P2d 1216 (1974), and *Tierney v. Duris, Pay Less Properties*, 21 Or App 613, 536 P2d 435 (1975). However, neither *West, Tierney* nor any other case holds that a quasi-judicial action can be taken without even *one* plenary hearing which complies with due process requirements.

The homeowners were told by the Hearings Council that they would be able to introduce certain evidence to the Board and that therefore the Hearings Council would not delay its decision to await the evidence; the Board then also declined to receive the evidence. The apparent basis for the Board's ruling, which was not

joined by all of its members, was that the testimony of the homeowners before the Hearings Council was sufficient evidence of diminution of value and that no further evidence in the form of expert testimony was necessary. However, the Board made no finding that there would be a diminution of market value and no finding or conclusion to indicate that evidence relating to market value was irrelevant or that other factors were entitled to greater weight than market value in determining whether injury to property would result. The petitioners were entitled either to attempt to prove diminution of value or to have a judicially reviewable finding or conclusion by the Board explaining why the proof was rejected or excluded. They got neither. It follows that petitioners were denied an adequate hearing by the county and that the trial court's judgment must be reversed.

The petitioners' next argument is that they were not given adequate notice of the *city's* hearing on the proposed sewerage development plan and on an environmental impact report which later became the basis for some of the findings and conclusions. The notice of the city hearing was published more than a month before the hearing in a newspaper of general circulation, and we do not agree that it was inadequate.

Petitioners' final contention is that the site for the facility was selected without consideration of "other available property," as required by *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973). While this appeal was pending, the Supreme Court held in *Neuberger v. City of Portland*, 288 Or 155, 603 P2d 771 (1979), that state legislation adopted subsequent to the decision in *Fasano* eliminated the "other available property" test required by *Fasano.* The County's action in the present case predated the *Neuberger* decision. However, the land use action of the city of Portland which *Neuberger* held was not subject to *Fasano's* requirement occurred before the adoption of the legislation which,

[609]

according to the court in *Neuberger*, eliminated that requirement. 288 Or at 169. Consequently, we conclude that the "other available property" test was extinct at the time the conditional use permit was granted in this case.

Reversed and remanded.