Argued and submitted December 2, affirmed December 23, 1980

MENGES et al,
*Petitioners,*
*v.*
BOARD OF COUNTY COMMISSIONERS
OF JACKSON COUNTY et al,
*Respondents.*

(NO. 78-3111-E-2, CA 14406, SC 27039)

621 P2d 562

Frank J. Van Dyke, Medford, argued the cause for petitioner. With him on the briefs was E.R. Bashaw, Medford.

William G. Carter, Medford, argued the cause for respondents. With him on the brief was Grant, Ferguson & Carter, Medford.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson, and Campbell, Justices.

TONGUE, J.

**TONGUE, J.**

This case involves the granting of a conditional use permit for construction of a sewage treatment plant over the protest of nearby landowners that to do so would reduce the market value of their property.

The Jackson County Hearings Council and the Board of Commissioners of Jackson County, after hearings at which the petitioners appeared, granted the City of Gold Hill a conditional use permit to build a sewage treatment plant near the banks of the Rogue River on a 3.46 acre parcel in an area zoned F-5 (farm residential; 5-acre minimum lot size). Petitioners, who own homes in the area of the proposed plant site, then filed a writ of review in the circuit court, which was denied. Petitioners then appealed to the Court of Appeals, which affirmed the denial of the writ of review. 44 Or App 603, 606 P2d 681 (1980); 45 Or App 797, 609 P2d 847 (1980). A petition for review was then allowed by this court, primarily because of its concern whether petitioners were improperly denied an opportunity to offer evidence to support their contention that construction of the sewage treatment plant would impair the market value of their property and whether, because of that contention, the Hearings Council and Board of Commissioners were required to make a finding of fact on that question.

*THE FACTS*

Article VI, § 1.2 of the Jackson County Zoning Ordinance authorizes the Hearings Council to approve a conditional use permit if it finds:

"1.   That the use will not be injurious to property and improvements in the area of the request.

"2.   That the use will not be detrimental to the health, safety or general welfare of persons residing or working in the area where the proposed use would be located."

On June 19 and 22, 1978, the Jackson County Hearings Council held a hearing on the application of the City of Gold Hill for a conditional use permit to build the sewage treatment plant. Extensive testimony was received at that hearing, including testimony to support findings and conclusions by it that the plant was "not designed to cause any odors, however, occasionally there may be odor

which can usually be corrected"; that "odor will be a nonexistent or negligible problem"; that "the nearest residence is approximately 400 feet from the proposed sewage treatment plant"; that "the site will be landscaped to make it more aesthetically pleasing"; and that the proposal satisfied requirements of the Comprehensive Plan and had been approved by the Environmental Protection Agency and the Department of Environmental Quality.

A considerable number of landowners in the area appeared at that hearing to object to the issuance of a permit for construction of the plant. By letters or oral statements some of these landowners contended that the construction of the plant would impair the market value of their property. The only evidence directly to the contrary was a statement made in presenting the "staff recommendation" that "we discussed this application" with Harley Finney, the chief appraising officer of the Assessor's Department, who

"* * * indicated that it is unlikely in his opinion that this proposed use would have any adverse effect on property values in the area. He pointed as an example of this to the City of Ashland, which installed some time ago a sewage disposal plant and which today you can see that subdivision development is partially encircling this, uh, facility. There may be an occasional problem caused by odor. This would emanate from chemicals used at the plant. Such a problem is likely to be very temporary, at worst, and easily correctable according to the information we've received."

The engineer who designed the proposed plant also stated at the hearing that the plant would not be "detrimental" to homes of people living in the area, and that "[i]f it's operated properly there won't be any odor problem."

The protesting landowners were not represented by an attorney at that hearing and no contention was made by them at that hearing that the Hearings Council should or must make a finding on the question whether the market value of nearby property would or would not be impaired by construction of the plant.

At the conclusion of that hearing one of the members of the Hearings Council made the following statement:

"One of the points brought out was that there would be some devaluation of property along the Rogue River to the home sites. This may be true, and, however, we are supposed to get expert testimony on these types of points and tonight we have just heard referrals to real estate people and so forth that say this, and I would like to say to the people that oppose this that this application, whether we vote for or against it, has to go before the county commissioners. I see, if it is appealed, it has to go before the county commissioners. And if it would do so, it might be a good point to get some expert testimony along these lines. * * *."

Another member of the council then said:

"I can understand the concern of the property owners nearby...and I would have to think twice before I would purchase a piece of property adjacent to it. Now this is only a personal feeling since there has been no expert testimony offered here, but I do feel that there is going to be a certain amount of actual damage to the property owners in the general area of the location of this plant. * * *"

The chairwoman also said:

"I feel that there will be some financial damage."

An attorney representing petitioners then filed a notice of appeal to the Jackson County Board of Commissioners. By that notice of appeal he contended that there were errors in some of the findings of fact. He also objected to some of the various "conclusionary findings," including a finding that "odor will be a non-existent or negligible problem"; that it would "not degrade environmental quality" and to a finding that Harley Finney had "indicated that it is unlikely the proposed water treatment plant would adversely affect the value of nearby property" on the ground that Harley Finney had not testified and no written statement by him had been offered. The notice of appeal did not, however, contend that the Hearings Council had erred in failing to make a finding on the question whether construction of the plant would or would not impair the market value of nearby property.

A hearing on the matter was then held by the Jackson County Board of Commissioners on July 20, August 2 and August 4, 1978. At that hearing the attorney representing the petitioners not only presented argument in support of the various contentions made in the notice of

appeal but also offered additional evidence, including the testimony and materials prepared by an appraiser, in support of the contention by petitioners that the market value of their lands would be impaired by construction of the proposed sewage treatment plant.

The attorney representing the City of Gold Hill objected to additional evidence upon the ground that under the procedural rules of the Board of Commissioners an appeal from an order by the Hearings Council is limited to argument by the parties unless there is some showing that additional evidence is required in the public interest or that such evidence could not have been produced with due diligence before the Hearings Council. He contended that evidence relating to market value could have been produced with due diligence at that hearing. That offered evidence, as well as other evidence offered by petitioners, was then rejected. The chairman of the board noted, however, that:

> "The record indicates that the landowners had testified at the previous hearings as to their belief that their property values would be lowered."

The attorney for petitioners also objected, as in the notice of appeal, to the finding by the Hearings Council referring to the hearsay statement by Mr. Finney on the subject of land values. That finding by the Hearings Council was omitted by the Board of Commissioners in the findings, conclusions and order which it then issued on August 23, 1978, and which otherwise adopted most of the findings and conclusions as previously made by the Hearings Council. Commissioner Moore dissented upon the ground that the city had not met its burden of proving that the use would not be injurious to property and improvements in the area.

Petitioners then filed a petition for writ of review in the circuit court. The petition alleged, among other things, that the Board of Commissioners had "declined to consider any additional evidence outside the record of the Hearings Council"; that the Board "failed to make any finding of fact that the operation of the sewage treatment plant, including odors and noise from it, would not be * * * injurious to residential properties in the area"; that the Board had granted the permit

"after evidence was in the record showing an adverse impact upon neighboring residential properties, without first making findings of fact (1) that there was no other land available for said use, and (2) if there was, that the subject site was better suited to said purpose than any other land available."

and that:

"Defendant Board of Commissioners found a lack of detriment to neighboring residences without any competent, substantial, reliable or probative evidence * * *."

No contention was made in that petition that the Board of Commissioners was required to make a finding of fact upon the question whether construction of the proposed sewage treatment plant would or would not impair the market value of adjacent property.

Upon the denial of a writ of review by the circuit court petitioners appealed to the Court of Appeals, which affirmed the circuit court, as previously stated.

1. *The denial of petitioners' offer of additional evidence.*

Petitioners rely upon ORS 215.422, which then provided:

"(1) A party aggrieved by the action of a hearings officer may appeal the action to the planning commission or county governing body, or both, however the governing body prescribes. * * * The procedure and type of hearing for such an appeal or review shall be prescribed by the governing body. An appeal or review proceeding shall be based upon, *but not limited to,* the record of the hearings officer's action.

"(2) A party aggrieved by the final determination may have the determination reviewed under ORS 34.010 to 34.100." (Emphasis added)

A first impression from reading the last sentence of this statute may be that in view of the words "not limited to" a party appealing to a county board of commissioners from an action by a hearings council, as in this case, cannot be "limited to" the record of the action by the Hearings Council, but has a *right* to offer additional evidence. If this be correct, then it must follow that petitioners had a right to offer additional evidence relevant to the issues to be decided by the Board of Commissioners, and counsel for the City of Gold Hill conceded in oral argument before this

court that evidence that market value of adjacent property would be impaired by construction of the sewage treatment plant is relevant to the question whether the use allowed by the approval of a permit for such a plant would "be injurious to property and improvements in the area."

We conclude, however, that this contention by petitioners is not well taken. First of all, such an interpretation of the words "but not limited to" would appear to be inconsistent with the previous provision of that statute that "the procedure and type of hearing for such an appeal shall be prescribed by the governing body." This would appear to permit a county board of commissioners to decide for itself whether appeals such as this are to be heard on the record, rather than "de novo." If, however, an appealing party has the *right* to offer additional evidence, such a "procedure and type of hearing" could not be "prescribed." As a result of this apparent inconsistency, we believe that ORS 215.422(1) is ambiguous, at least when read as a whole, requiring a consideration of its legislative history in an effort to determine the intent of the legislature in its use of the words "but not limited to."

Upon examination of the legislative history of ORS 215.422(1), we find that prior to 1977 that section read as follows:

> "A party aggrieved by the action of a hearings officer taken under subsections (1) to (4) of ORS 215.416 may appeal such approval or denial to the governing body of the county. The governing body may, on its own motion, review any action taken under subsections (1) to (4) of ORS 215.416."

At the 1977 session of the Oregon Legislature SB 846 was offered and would have provided:

> "A party aggrieved by the action of a hearings officer may appeal the action to the planning commission or county governing body, or both, however the governing body prescribes. The appellate authority on its own motion may review the action. The procedure and type of hearing for such an appeal or review shall be prescribed by the governing body. Upon appeal or review the appellate authority shall consider the record of the hearings officer's action."

That bill was apparently sponsored by the Association of Oregon Counties (AOC), which explained the purpose of this change to be as follows:

"The purpose for the revisions to ORS 215.422 is to allow each county to set the rules for appeals from hearings officers. The county ordinance may designate the governing body or the planning commission or both as the appellate body for hearings officer decisions. And, as revised, an appeal to either or both appellate bodies may be 'on the record' or the county ordinance could conceivably allow for 'de novo' review of certain types of hearings officer decisions. In either situation, as a minimum the appellate authority must give some consideration to the record of the hearings officer's action."

An "alternative proposed amendment" to the last sentence of ORS 215.422(1) was then submitted by the Associated Oregon Industries (AOI), which would have provided that:

"An appeal or review proceeding shall be based upon the record of the hearing officer's action."

At a hearing on SB 846 on June 2, 1977, before the Senate Environment and Energy Committee, Mr. Hawes, representing AOI, stated that:

"We would simply ask that the language in SB 100 - ORS 197.305(1) - be used instead - 'upon the record of the hearings officer's action.'

"The point to make very simply is that that's why you have the due process hearings procedure which the counties do have in the statutes now. Build a record and then rely on it."

Mr. Mattis, representing AOC, then responded as follows:

"Well, the problem which I suggest with the AOI plan is that I'm not suggesting that we not consider the record or even conceivably base their opinion on it, but this addresses the type of hearing. Some counties, from the smaller ones, there is still a desire by the governing body to retain the ability to have an evidentiary hearing, or what the courts consider a de novo hearing, to consider the quasi-judicial action anew... Consider it anew and make a judgment.

"If they choose to have that type of hearing, the language on page 23 would require that they at least consider

the hearings officer record. The problem I suggest with the AOI proposal is that I feel it implies that there cannot be a de novo hearing process allowed at the local level."

■ After some further discussion, including suggestions that some changes be made in the last sentence of the amendment proposed by AOC in order to satisfy the objections by AOI, the following appears:

Mr. Hawes: "Perhaps 'shall be based upon, but not limited to, the record of the hearing officer's action.'"

Mr. Mattis: "That takes care of my problem."

A motion was then made and carried to amend SB 846 by the adoption of that proposal.

From the foregoing, we believe it to be clear that the intent of the 1977 legislature in its adoption of the amendment proposed by AOC was not to confer upon any appealing party an unlimited right to offer any relevant new evidence, but rather to further accommodate the desire of the counties to be permitted flexibility in deciding for themselves the procedure and type of hearing to be held in such an appeal, including the question whether new or additional evidence should be permitted or excluded at such a hearing.

■ As previously noted, Jackson County adopted rules of procedure for such appeals under which new or additional evidence could be offered only upon a showing that consideration of such evidence is required by the public interest or that such evidence could not have been offered to the Hearings Council in the exercise of due diligence. That rule of procedure was proper under the provisions of ORS 215.422 and was not improperly applied by the Board of Commissioners in this case, in view of the discretion reserved by it under the provisions of that rule.

It is also of interest to note that the 1979 session of the Oregon legislature removed this ambiguity in the provisions of ORS 215.422(1) by further amending that section to read as follows:

"A party aggrieved by the action of a hearings officer may appeal the action to the planning commission or county governing body, or both, however the governing body prescribes. The appellate authority on its own motion may review the action. The procedure and type of hearing

for such an appeal or review shall be prescribed by the governing body."

According to "explanatory comments" appearing as a part of the record of a hearing on SB 435 on March 14, 1979, before the Senate Legislative Committee on Trade and Economic Development:

> "* * * ORS 215.422 is amended to remove the existing, possibly ambiguous language (requiring that land use appeals within county government be 'based upon but not limited to the record') so as to clarify that the county has discretion to hear a case de novo or on the record under language in ORS 215.422 (providing that 'the procedure and type of hearing shall be prescribed by the governing body')."

For these reasons we hold that petitioners were not entitled as a matter of right under ORS 215.422 to offer additional evidence at the hearing before the Jackson County Board of Commissioners and that it could decide for itself, as its rules permit, whether or not to reject the additional evidence offered by the petitioners at that hearing upon finding that the public interest did not require it to consider such evidence or that the evidence could have been produced with due diligence at the hearing before the Hearings Council. Petitioners make no contention the Board could not properly make such findings in this case.

Petitioners also complain that they were told at the conclusion of the hearing before the Hearings Council that they should "get some expert testimony" to offer at the hearing on appeal to the Board of County Commissioners. Obviously, any such statements by members of the Hearings Council were not binding upon the Board of Commissioners and could not impose upon that Board the duty to receive such evidence. Also, as previously noted, no attempt was made by petitioners (who were not then represented by an attorney) to offer expert testimony at the hearing before the Hearings Council and they were not precluded by it from offering such evidence.

2. *The failure to make a finding upon the effect of the sewage treatment plant upon the market value of property in the area.*

As previously noted, counsel for the City of Gold Hill, in oral argument before this court, conceded that the effect of the construction of this sewage treatment plant upon the market value of property in the area was a relevant consideration in determining whether, under Article VI, § 1.2 of the Jackson County Zoning Ordinance, that proposed use "will not be injurious to property and improvements in the area of the request."[1]

Petitioners contended in their brief on appeal to the Court of Appeals that:

"When an issue of fact is raised in a zoning procedure relevant to the criteria prescribed, findings must be made on the issue. *Sunnyside Neighborhood vs. Clackamas County Commissioners,* 280 Or 3, 22, 569 P2d 1063 (1977). It is not enough simply to state the findings in the conclusionary terms of the ordinance. *Sunnyside Neighborhood vs. Clackamas County Commissioners, supra.* The findings adopted by the board of commissioners pointedly ignore the concerns expressed by the plaintiffs considering the impact on their property values of putting a sewage treatment plant in their residential neighborhood, and contented itself largely with a recital of the 'negative environmental assessment', and a conclusionary statement in the terms of the zoning ordinance."

The question raised by this contention is an important one. In *Sunnyside, supra,* this court held, at page 21:

"We wish to make it clear that by insisting on adequate findings of fact we are not simply imposing legalistic notions of proper form, or setting an empty exercise for local governments to follow. No particular form is required, and no magic words need be employed. What is needed for adequate judicial review is a clear statement of what, *specifically,* the decisionmaking body believes, after hearing and considering all the evidence, to be *the relevant and important facts* upon which its decision is based. Conclusions are not sufficient." (Emphasis added)

In addition, ORS 215.416(6) now provides that:

"Approval or denial of a permit shall be based upon and accompanied by a brief statement that explains the

---

[1] It might be contended, however, that the words "injurious to property and improvements" were intended to apply only to physical injury and not extend to injury to market value.

criteria and standards considered relevant to the decision, states the facts relied upon in rendering the decision and explains the justification for the decision based on the criteria, standards and facts set forth."

If this court were to hold not only that these rules are applicable in a case such as this, but that upon the application of such rules both the Hearings Council and the Board of Commissioners were required to make a specific finding upon the question of the effect of construction of the proposed sewage treatment plant upon the market value of property in the area, it would be necessary to remand this case with instructions requiring the making of such a finding.

Had the petitioners in this case requested in 1978 that the Hearings Council or the Board of Commissioners make such a finding, either the Council or the Board might well have done so. And had petitioners in their writ of review proceeding before the circuit court in October 1978 contended that the record of the proceedings before either the Council or the Board was defective because of the absence of such a finding that court perhaps might have remanded this case with instructions requiring that such findings be made.

We need not decide in this case whether a request for such a special finding must have been made before the Hearings Council or on appeal to the Board of Commissioners in order to raise on writ of review or appeal to the Court of Appeals the failure to make such a finding. In this case petitioners also failed to contend in their petition for a writ of review to the circuit court that the Hearings Council and Board of Commissioners erred in failing to make such a finding. Because petitioners made that contention for the first time on appeal to the Court of Appeals, it would be improper for this court, at this late date, to remand this case for such findings. *Cf. Sunnyside Neighborhood v. Clackamas Co. Comm., supra,* 280 Or at 10.

3. *Evidence in support of finding that use not "injurious" to property in area.*

Petitioners also contend that there was no "reliable, probative and substantial" evidence to support the finding by the Hearings Council and by the Board of

Commissioners that approval of the conditional use permit for construction of the sewage treatment plant "will not be injurious to property and improvements in the area," as required by Article VI, § 1.2 of the Jackson County Zoning Ordinance. The question to be decided, however, is whether there was "substantial" evidence to support that finding, and this court is precluded from setting aside that finding if it is supported by substantial evidence.

In *Western Amusement v. Springfield,* 274 Or 37, 40, 545 P2d 592 (1976), this court held that the words "reliable, probative and substantial" as then used in the writ of review statute, ORS 34.040, "mean 'substantial' evidence." Indeed, ORS 34.040(3) has been amended so as to now refer to findings "not supported by substantial evidence in the whole record." "Substantial evidence," for the purposes of review of findings by an administrative agency, has been defined as:

> "* * * such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Davis, Administrative Law Text (3d ed 1972), § 29.02, pp 527-28, quoting from *Consolidated Edison Co. v. NLRB,* 305 US 197, 229, 59 S Ct 206, 83 LEd 126 (1938). *See also* ORS 183.482(8)(c).

In considering this contention we must assume that evidence that construction of the plant would impair the market value of property in the area is relevant to a determination of the question whether such a use would be "injurious" to such property, as conceded by counsel for the City of Gold Hill. It does not necessarily follow, however, that because some owners of property in the area testified that construction of the plant would impair the market value of their property, the Hearings Council and Board of Commissioners would be precluded from the making of a finding that such a use would "not be injurious to property" in the area if there was "substantial evidence in the whole record" to support such a finding.

This is particularly true on the record in this case because the testimony of the property owners was indefinite as to the amount or extent of any such impairment to the market value of their property. Thus, the Hearings Council and Board of Commissioners could properly have

found, in accordance with the testimony of the engineer who designed the plant, that although out of concern over the possible odor emanating from the proposed plant there might be some temporary impairment of the market value of some of the adjacent property to some extent, once the plant was in operation and was demonstrated to be odor free, there would be no substantial continuing impairment of the market value of property in the area.

■ ■    In addition, there was evidence in this case, although hearsay in nature, on the specific question of whether such a plant would cause a reduction in the market value of adjacent property. That evidence consisted of a statement before the Hearings Council by the staff member who presented the staff recommendation for construction of the plant that he had discussed the application with Harley Finney, the chief appraising officer of the Assessor's Department, who stated that "it is unlikely in his opinion that this proposed use would have any adverse effect on property values in the area." It is well established that at least when hearsay evidence is not objected to, as in this case, such evidence is "competent evidence sufficient to support a verdict" in an action at law. *See Laubach v. Industrial Indemnity Co.,* 286 Or 217, 222, 593 P2d 1146 (1979), and cases cited therein. Similarly, in administrative proceedings hearsay evidence is commonly received and accorded probative value, at least when received without objection, as in this case. *See* Davis, Administrative Law Text (3d ed 1972), § 14.05, p 276. *See also* ORS 183.450(1).

The Hearings Council apparently gave some consideration to that hearsay evidence, which is referred to in its findings and conclusions. The Board of Commissioners, however, apparently in response to the motion by counsel for petitioners to strike all reference in the record to that hearsay evidence, omitted any reference to such evidence in its findings and conclusions.

■    Upon examination of the record we conclude that even without regard to such hearsay evidence there was sufficient other evidence, although perhaps somewhat scanty, to satisfy the requirement that there must be "substantial evidence" to support the finding by the Board of Commissioners that construction of the sewage treatment

plant would "not be injurious to property and improvements in the area." That evidence includes the following:

(1) The testimony of the engineer who prepared the proposal for the project that the plant was designed so as not to create an odor problem and that if it is operated properly there would not be any odor.

(2) The testimony of the same engineer that the proposed plant would not be "detrimental" to the homes of people in the area.

(3) An architect's drawing of the proposed plant showing the buildings to be attractive in design and also showing the tract to be attractively landscaped, in accordance with testimony that the tract would be landscaped.

(4) The fact that the construction of the proposed sewage treatment plant had been approved by the Environmental Protection Agency and the Department of Environmental Quality.

## 4. *Other contentions by petitioners*

Petitioners also make some other contentions in their brief in the Court of Appeals and in their petition for review to this court, including the following:

(1) That the notice of an earlier hearing by the City of Gold Hill on the proposed sewage treatment plant was inadequate.

(2) That the permit to build the plant on an undersized parcel violated the county zoning ordinance.

(3) That the site for the proposed plant was selected without consideration of "other available property."

We have not overlooked these and other contentions by the petitioners, but conclude that they are not well taken and that the Court of Appeals reached the correct result in its disposition of these three contentions, although we do not necessarily agree with all of its reasoning in doing so.

Finding no error, we affirm the order by the Jackson County Board of Commissioners and the decision by the Court of Appeals affirming that order.

Affirmed.