## HITCHCOCK,
*Petitioner,*

*v.*

## McMINNVILLE CITY COUNCIL,
*Respondent,*
*and*

## INDUSTRIAL INVESTMENT CORPORATION,
*Intervenor-Respondent.*

(TC 35510,   CA 15804,   SC 27296)

631 P2d 777

John W. Hitchcock, McMinnville, argued the cause and filed briefs pro se.

Daniel H. Skerritt, of Lindsay, Nahstoll, Hart, Neil & Weigler, Portland, argued the cause and filed a brief for intervenor-respondent.

LINDE, J.

## LINDE, J.

Plaintiff, a resident of the City of McMinnville, sought a writ of review to challenge the refusal of the McMinnville City Council of a proposal to make changes in the city's comprehensive plan and zoning ordinance governing certain real property. On motion of an intervening owner of property affected by the proposal, the circuit court dismissed the writ. The Court of Appeals affirmed on the ground that the petition was untimely, having been filed more than 60 days after the date of the meeting at which the city council took the challenged action, although less than 60 days after the entry of the approved minutes of that meeting. 47 Or App 897, 615 P2d 409 (1980). Considering the question from which event to compute the period both doubtful and significant, we allowed review. We affirm the dismissal of the writ of review, though for somewhat different reasons.

The case once again presents a problem of matching the judicial procedure of the writ of review, ORS 34.010-34.100, to the vagaries of local governmental processes, specifically in land use regulation. *Cf. Neuberger v. City of Portland*, 288 Or 155, 158-166, 603 P2d 771 (1979), reviewing the characteristics of this recurring problem.[1] Use of the writ of review presupposes that the action sought to be reviewed was an "exercise of judicial or quasi-judicial functions," ORS 34.040, of a kind to which a plaintiff could be and was a "party," ORS 34.020, and which resulted in a "decision or determination." The plaintiff must petition for the writ "within 60 days from the date of the decision or determination sought to be reviewed." ORS 34.030.

In this case, plaintiff filed a petition on September 1, 1978, seeking review of an action alleged to have been taken by the city council on June 12, 1978, and commemorated in minutes of that meeting which were approved on July 5, 1978. Plaintiff argues that the 60-day

---

[1] Since 1979, jurisdiction of review of "any land use decision of a city, county or special district governing body or a state agency" has been placed in the Land Use Board of Appeals established by Oregon Laws 1979, ch 772. The same act excepted land use decisions from review by writ of review under ORS 34.020. Oregon Laws 1979, ch 772, §§ 4, 5, 6, 8.

period within which he could petition for the writ of review began with the date when the action was formally commemorated. Defendants and intervenor contended, and the courts below held, that the period began on June 12, when the council took the action challenged by plaintiff. The intervenor, which defended the case in the Court of Appeals, also contended that the city council's action on June 12 was not a "quasi-judicial" decision.

If that action was a quasijudicial decision reviewable by writ of review, plaintiff's position may be well taken. When *Fasano v. Washington Co. Comm.*, 264 Or 574, 507 P2d 23 (1973) and its sequels broadened the concept of "quasi-judicial functions" of local governments so as to apply its procedural guarantees beyond conventional types of individualized adjudications, the effect also broadened the range of persons who might be "parties" to these procedures. *Cf. Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 609-612, 601 P2d 769 (1979). Each such "party" whose "substantial interest" in the government's action might suffice for a writ of review, ORS 34.040, may not necessarily be present at the meeting when the "decision or determination" is made nor be personally informed thereof at that time. Moreover, without some official record of the action taken, the occurrence and nature of that action itself would become a potentially contested issue of fact, inviting further complications as to evidence and burdens of proof. The public meeting law, ORS 192.610-192.690, aimed at general public information rather than judicial review, requires the publication of written minutes "within a reasonable time after the meeting," including disposition of all "motions, proposals, resolutions, orders, ordinances and measures" and other votes taken. ORS 192.650. The McMinnville City Charter provided for such minutes.

The need to decide the issue of timeliness, however, arises only if the city council's action on June 12 otherwise was properly challenged by a petition for writ of review. This question requires us to examine the proceedings that led to the action on June 12.

In February 1978, plaintiff submitted to the city council a written petition, asserting that zoning of a specified 12-acre parcel of land for commercial use contravened

certain provisions of the city's comprehensive plan and of the statewide land use planning goals and requesting that the city planning commission initiate proceedings for rezoning the land. The council referred the matter to the planning commission.

On March 16, 1978, the planning commission decided to give notice of a commission meeting to consider rezoning the property from general commercial use ("C-3") to light industrial ("M-1") and possibly designating it for planned unit development ("PD"). The proposal or application for a zone change was prepared and presented as one of the commission itself. The hearing on the proposal was held on April 6, 1978. It was conducted as a "quasi-judicial" proceeding pursuant to the applicable city ordinance. At the end of the hearing, the planning commission by a divided vote decided to recommend that the zoning and plan designation of the property "remain the same; status quo." On April 13, after the preparation of supporting findings, the commission transmitted this recommendation to the city council.[2]

The commission's recommendation was taken up by the city council on May 2, 1978. The proceedings at this meeting are important for understanding the character of the later council meeting of June 12, which led to plaintiff's petition for writ of review.

Discussion of the planning commission's recommendation at the city council's May 2 meeting was devoted wholly to questions of procedure. The planning commission's recommendation, as stated above, was to reject the proposed zone change and to leave the zoning of the land at issue in "status quo." Members of the city council brought up unresolved questions concerning possible archeological materials on the site and potential acquisition of the land for park purposes. The city attorney advised the council that it could act on those issues heard by the planning commission on the record and findings made by the commission, but that zone changes other than those considered

---

[2] Intervenor's brief repeats, without explanation, an assertion that the Commission recommended a zone change although the circuit court found that this assertion was erroneous.

by the planning commission would require making a further record after notice of the new issues or proposals, though the same procedure was not needed for considering acquisition of the land. He also advised the council that a vote to accept the planning commission's recommendation would leave the land zoned as it was, and so would a vote to reject the recommendation.

In the course of a lengthy and rather unfocused discussion, a member of the council moved that the planning commission's recommendation against a change be rejected. This motion was adopted. Although the legal effect of this action equally may have been to leave the zoning of the property in "status quo," as the city attorney advised, the choice to reject rather than to accept the commission's recommendation perhaps was meant to imply that the future status of the property remained unfinished business. In fact, the council proceeded at the same meeting to adopt a further motion that the council set hearings to consider the best possible use of that piece of property "de novo." A further lengthy discussion before the vote made it clear that the proposed hearing, eventually set for June 12, would be "outside the zoning ordinance," in the words of the city attorney, and would be designed to seek "public input to gain their sentiments" rather than to focus on any particular zone change proposal.

This character of the June 12 meeting was reaffirmed at the beginning of that meeting. In calling the meeting to order, the mayor described it as an "informal hearing" and an "old family town hall meeting." The city attorney reminded the council that the planning commission had recommended leaving the land zoned as it was, and that the council had turned down that recommendation. Asked by one council member whether the council would make a decision that evening, he advised that the council would not then make a decision on the issue of a zone change. The attorney for the present intervenor raised what he called a "point of order" and an "objection" to making any zone change at the meeting. The city attorney replied that there would be no "decision tonight on what is the particular land use," except possibly a policy decision regarding potential park land acquisition,

and that "what is transpiring tonight is in the nature of a legislative proceeding. . . . We are not, in my opinion, reaching a decision with regard to this particular piece of property."

The record could not be clearer that the city council went into the June 12 meeting committed to hear general testimony and not reach any decision. Nonetheless, a member of the council, after reviewing the arguments against adding to the city's parks, moved that the council "not hold any further hearings on this particular piece of property and. . . leave it zoned as it is." The mayor subsequently rephrased these final words as "leave the zoning as it is."[3] The motion was adopted by a 4-3 vote. It is this action that plaintiff sought to bring before the circuit court on writ of review.

No doubt the foregoing course of events in the city council left a potential challenger of the disputed zoning with an apparent conundrum. The council's action on May 2 had been to *reject* the planning commission's recommendation to leave the property zoned as it was. Even if this constituted a "decision or determination" that could be reviewed at all, it is not one that a critic of the existing zoning would petition to have reviewed. At worst, from his standpoint, it left the original proposal for a change presented by the planning commission, though rejected by itself, undisposed of as an item of unfinished business for future council action.

The motion adopted on June 12, on the other hand, came at the end of an explicitly "legislative" or "town hall" type of hearing. The motion followed an earlier announcement that the meeting was not designed for arguments by "proponents and opponents," and it did not purport to be based on any "quasi-judicial" record before the planning commission or the city council. It had been announced that the only policy on which some action might be taken would be the possible acquisition of park land in the area. This

---

[3] Indeed, the official minutes later reported a third version of the motion, ending with "leave it as it is." That ambiguous wording might have been the only as well as official version before the circuit court, if the verbatim record of the meeting had not been transcribed.

also was the main point addressed by the council member who made the motion.

In this setting, we think that the second part of the motion, beyond the proposal not to hold further council hearings, cannot properly be construed as intending a reversal of the action taken on May 2 in the quasijudicial proceeding under the zoning ordinance. The phrase "leave the zoning" or "leave it zoned" or "leave it as it is," at the end of a general "town meeting" discussion of possible park acquisition or other uses, could equally be understood as meaning to leave the zoning *question* as it stood prior to the June 12 meeting, after the May 2 vote rejecting the planning commission's recommendation to reaffirm the existing status. Either meaning may have been intended, but in view of the repeated assertions at the June 12 hearing that the council could not and would not make a decision on the merits of the zoning proposal that evening, we believe the council deserves to be credited with intending only a procedural motion and not one that it knew to be out of order. Therefore we agree with the intervenor that the motion was not a quasijudicial decision disposing of the planning commission's recommendation.

Understandably, the June 12 motion on its face could appear to plaintiff as council action that would make the suspended issue ripe for judicial review; but if it was not a "decision or determination" reached in the exercise of a "quasijudicial function" within the terms of ORS 34.020-34.040, it would not be reviewable by writ of review. On the record of the June 12 meeting, we think that the challenged motion was not designed to be a quasijudicial decision to reverse the action taken on May 2. The dismissal of the petition for writ of review was not error.

Affirmed.